In re the Marriage of Robert D. HILLSTROM, Appellee,

and

Lisa A. HILLSTROM, Appellant.

No. 04CA0127.

Colorado Court of Appeals, Div. II.

Nov. 3, 2005.

Chase Law, LLC, Sean A. Chase, Denver, Colorado, for Appellee.

Craig Franklin Chambers, Littleton, Colorado, for Appellant.

ROTHENBERG, J.

Lisa A. Hillstrom (mother) appeals from the district court's orders adopting a magistrate's ruling that granted the motion of Robert D. Hillstrom (father) to dismiss, for lack of subject matter jurisdiction, mother's action seeking to docket a foreign decree pursuant to § 14–11–101, et seq., C.R.S.2005, and her motion to modify child support. The sole issue on appeal is whether Colorado has jurisdiction to modify a Nebraska child support order. Because we conclude it does not, we affirm.

### I. Background

The salient facts are undisputed. The parties were married in Colorado in 1985, and one of their two children was conceived and born here. The parties later moved to Nebraska. In 1989, their marriage was dissolved there, at which time the parties entered into a property settlement agreement providing that father would pay child support to mother for the parties' two sons.

Mother later returned to Colorado with the children, and father moved to the state of Washington.

In February 2001, the parties filed a stipulation in the Nebraska court modifying father's child support obligation because the older son was residing with father.

In August 2001, after the older son had returned to Colorado to live with her, mother filed an action in the Colorado district court to docket the foreign decree pursuant to § 14–11–101, et seq., and a motion to modify parental responsibility, parenting time, and child support. A copy was sent to father, but he was not personally served. In 2003, mother filed another motion to modify child support, and father was personally served in the state of Washington.

Father moved to dismiss mother's action to docket the Nebraska decree under § 14–11–101, et seq., contending that (1) Nebraska has continuing exclusive subject matter jurisdiction over all child support matters, pursuant to the Uniform Interstate Family Support Act (UIFSA), § 14–5–101, et seq., C.R.S.2005; and (2) the requirements of UIFSA had not been met. See § 14–5–611(a)(1), C.R.S.2005.

Mother responded, contending that she initiated this action pursuant to § 14–11–101, et seq., not under UIFSA, and that the Colorado district court could modify child support as long as it had jurisdiction under § 14–11–101. She also relied on § 14–5–104, C.R.S. 2005, which states that UIFSA is not the "exclusive method of establishing or enforcing a support order." Section 14–5–104(b)(1), C.R.S.2005.

The magistrate granted father's motion to dismiss, concluding that the court lacked subject matter jurisdiction because the requirements of UIFSA had not been met, and that the state of Washington is the proper jurisdiction to address child support.

On review, the district court affirmed the magistrate's order, but applied a different analysis. The court concluded that it lacked subject matter jurisdiction under § 14–11–101 to modify the Nebraska order because there was an "irreconcilable conflict between § 14–11–101 and 14–5–611 [of UIFSA]," and that § 14–5–611 was the more specific provision. Based on that analysis, the district

court ruled that the more specific provision in § 14–5–611(a) of UIFSA is the exclusive authority for modifying such orders.

In reaching its conclusion that UIFSA provides the exclusive method of modifying a foreign support order, the district court relied on, among other things, § 14–5–104(b)(1), which provides that UIFSA is *not* the exclusive method of "establishing or enforcing" a support order. Based on this language, the district court concluded the converse was true and therefore UIFSA *is* the exclusive method of *modifying* a support order.

The district court reasoned as follows:

The Court finds that pursuant to C.R.S. § 14–5–104, C.R.S. § 14–11–101 can be construed as a basis for conferring subject matter jurisdiction in actions brought for the purpose of *establishing* or *enforcing* a foreign support order because the sections do not conflict in regard to *establishing* or *enforcing* such orders. The court finds, however, that there is an irreconcilable conflict between C.R.S. § 14–11–101 and C.R.S. § 14–5–611. Therefore, the more specific provision, § 14–5–611, must prevail in cases where a party seeks *modification* of a foreign support order.

(Emphasis in original.)

Mother appeals from the district court's ruling.

## II. Subject Matter Jurisdiction

■ Mother contends the district court erred in concluding it lacked subject matter jurisdiction to modify child support. She maintains that the court had jurisdiction to modify the Nebraska child support order because the requirements of UIFSA were met, as were the procedural and personal jurisdictional requirements of § 14–11–101, and that the district court erred in concluding there was an irreconcilable conflict between the remedies in UIFSA and in § 14–11–101. We disagree.

Subject matter jurisdiction concerns the authority of the court to decide a particular matter. *In re Marriage of Haddad,* 93 P.3d 617 (Colo.App.2004); *In re Marriage of Ness,* 759 P.2d 844 (Colo.App.1988).

## A. Full Faith and Credit for Child Support Orders Act

On October 20, 1994, the U.S. Congress enacted the Full Faith and Credit for Child Support Orders Act, 28 U.S.C. § 1738B (Full Faith and Credit Act). The stated policy of the Full Faith and Credit Act is the need "to establish national standards under which the courts of the various States shall determine their jurisdiction to issue a child support order and the effect to be given by each State to child support orders issued by the courts of other States." Full Faith and Credit for Child Support Orders Act, Pub.L. No. 103–383, § 2(b), 108 Stat. 4063 (1994); *see Harbour v. Harbour,* 677 So.2d 700 (La. Ct.App.1996); *In re Marriage of Mowrer,* 817 P.2d 612, 614 (Colo.App.1991)("[Section 14–11–101] permits the modification of decrees of other states to the extent that such modifications do not offend the full faith and credit clause, and if the Colorado court has *in personam* jurisdiction over the litigants." (citation omitted)).

The purposes of the Full Faith and Credit Act are:

(1) to facilitate the enforcement of child support orders among the States;

(2) to discourage continuing interstate controversies over child support in the interest of greater financial stability and secure family relationships for the child; and

(3) to avoid jurisdictional competition and conflict among State courts in the establishment of child support orders.

Full Faith and Credit Act § 2(c).

The Full Faith and Credit Act compels a state court to "enforce according to its terms a child support order made consistently with this section by a court of another State" and forbids a state court from "seek[ing] or mak[ing] a modification of such an order except in accordance with [§ 1738B(e), (f), and (i) of the Act]." 28 U.S.C. § 1738B(a); *see Harbour v. Harbour, supra.*

Section 1738B(f)(1) of the Full Faith and Credit Act provides, as relevant here, "[i]f only one court has issued a child support order, the order of that court must be recognized." Section 1738B(i) provides:

Registration for modification.—If there is no individual contestant or child residing in the issuing State, the party or support enforcement agency seeking to modify, or to modify and enforce, a child support order issued in another State shall register that order in a State with jurisdiction over the nonmovant for the purpose of modification.

In enacting the Full Faith and Credit Act, Congress addressed the problem of multiple, and often inconsistent, child support orders, and intended to provide a consistent, nationwide scheme for the modification of child support orders. *Cf. Middleton v. Hartman,* 45 P.3d 721 (Colo.2002)(federal law preempts state law when Congress expresses a clear intent to preempt state law; when there is outright or actual conflict between federal and state law; when compliance with both federal and state law is physically impossible; when there is an implicit barrier within federal law to state regulation in a particular area; when federal legislation is so comprehensive as to occupy the entire field of regulation; or when state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress).

### B. UIFSA

UIFSA was drafted by the National Conference of Commissioners on Uniform State Laws to replace the Uniform Reciprocal Enforcement of Support Act (URESA) and Revised Uniform Reciprocal Enforcement of Support Act (RURESA) in the states. Colorado enacted UIFSA, effective January 1, 1995, in accordance with Congress's requirement that all states adopt UIFSA by January 1, 1998. 42 U.S.C. § 666(f) (Supp.1996). *See generally,* Kurtis A. Kemper, Annotation, *Construction and Application of Uniform Interstate Family Support Act,* 90 A.L.R.5th 1 (2001).

Under RURESA, proceedings were de novo, at times resulting in more than one valid, co-existing order in a case. UIFSA allows for only one enforceable order in a case at any time. This is accomplished by limiting jurisdiction to modify the original order. *See* James C. Schumacher, *The Colo-rado Uniform Interstate Family Support Act,* 23 Colo. Law. 2535 (Nov.1994).

Section 14–5–205(c), C.R.S.2005, of UIFSA provides that a court of this state must recognize the continuing, exclusive jurisdiction of a tribunal of another state that has issued a child support order pursuant to substantially similar law. However, under UIFSA, the issuing tribunal has continuing, exclusive jurisdiction only as long as one of the parties or the child continues to reside in the issuing state, or unless each party consents in writing to a court of another state assuming continuing, exclusive jurisdiction to modify the order. *See* § 14–5–207, C.R.S.2005; *cf.* § 14–5–205, C.R.S.2005; *In re Marriage of Zinke,* 967 P.2d 210 (Colo.App.1998); Schumacher, *supra.*

It is undisputed that Nebraska had jurisdiction to enter the initial support order, and no party has alleged that Nebraska's law is not substantially similar to UIFSA. It is also undisputed that mother and the children are now residents of Colorado, that father is a resident of the state of Washington, and that there is no evidence father asked the Colorado tribunal to modify the support order or to assume continuing, exclusive jurisdiction over child support.

Accordingly, we conclude Nebraska no longer has exclusive jurisdiction over child support. *See Jurado v. Brashear,* 782 So.2d 575, 580 (La.2001)("The comments by the drafters of the Uniform Act clearly show that the issuing court cannot *modify* a child support order after the obligor, obligee and child all leave the state permanently." (emphasis in original)).

We next consider the applicability of § 14–5–611(a) of UIFSA, which permits a court in this state to modify a child support order issued in another state if:

(1) The following requirements are met:

(A) Neither the child, nor the obligee who is an individual, nor the obligor resides in the issuing state;

(B) A petitioner who is a nonresident of this state seeks modification; and

(C) The respondent is subject to the personal jurisdiction of the tribunal of this state; or

(2) This state is the state of residence of the child or a party who is an individual subject to the personal jurisdiction of the tribunal of this state, and all of the parties who are individuals have filed consents in a record in the issuing tribunal for a tribunal of this state to modify the support order and assume continuing, exclusive jurisdiction.

Here, the requirements of the statute were not met because mother (a Colorado resident) sought modification, father was not personally served in Colorado, and he has not consented to the court's personal or subject matter jurisdiction. Nor is there any other basis for personal jurisdiction. *See In re Marriage of Malwitz*, 99 P.3d 56 (Colo.2004)(holding that Colorado courts had jurisdiction over nonresident obligor under UIFSA to establish initial child support order).

Therefore, the magistrate and the district court correctly applied § 14–5–611(a) of UIFSA and concluded that modification of child support under UIFSA was not authorized in Colorado, and that the Colorado district court lacked subject matter jurisdiction over mother's motion to modify. *See Bordelon v. Dehnert*, 770 So.2d 433, 436 (La.Ct.App.2000)(concluding Louisiana courts lacked justification to modify Virginia child support order where father-obligee sought modification and resided in Louisiana, but mother-obligor resided in Virginia); *Gentzel v. Williams*, 25 Kan.App.2d 552, 965 P.2d 855 (1998)(concluding Kansas courts lacked jurisdiction to modify Arizona child support order where father-obligee sought modification and resided in Kansas, but mother-obligor and children resided in Texas).

### C. Section 14–11–101

Mother nevertheless contends that the court has subject matter jurisdiction under § 14–11–101 to modify child support, that the remedies in UIFSA and § 14–11–101 for the modification of support are cumulative, and that the district court erred in concluding otherwise. We disagree.

Section 14–11–101 provides as relevant here:

(1) Upon the docketing in a court of competent jurisdiction in this state of exemplified copies of all the written pleadings and court orders, judgments, and decrees in a case of divorce, separate maintenance, or annulment, or for support of minor children or a spouse, or for a protection order or other court order issued for the protection of a party or parties, or for a combination of the same entered in any court of competent jurisdiction in any other state or jurisdiction having reciprocal provisions for a like enforcement of orders, judgments, or decrees entered in the state of Colorado and upon obtaining jurisdiction by personal service of process as provided by the Colorado rules of civil procedure, said court in this state shall have jurisdiction over the subject matter and of the person in like manner as if the original suit or action had been commenced in this state, and is *empowered to amend, modify, set aside, and make new orders* as the court may find necessary and proper so as to do justice and equity to all parties to the action according to the public policy of this state, and has the same right, power, and authority to enter orders for temporary alimony, support money, and attorney fees as in similar actions originating in this state.

(2) The courts of this state in cases of dissolution of marriage, legal separation, or declaration of invalidity of marriage, or for support of minor children or a spouse, or for the protection of a party or parties by means of a protection order, however styled or designated, or for any combination of the same, where the action originated in this state, have the power to enforce the decrees, judgments, and orders of other states or jurisdictions made pursuant to statutes similar to this statute, or to amend the same, or to enter new orders to the same extent and in the same manner as though such decrees, judgments, and orders were entered in the courts of this state.

(Emphasis added.)

She also relies on § 14–5–104(a), C.R.S. 2005, which provides that "[r]emedies provided by this article are cumulative and do not

affect the availability of remedies under other law." While her reliance on the language in § 14–5–104(a) is understandable, we conclude it is misplaced.

■ If possible, courts must seek to harmonize apparently conflicting statutory provisions. *Cooley v. Big Horn Harvestore Sys., Inc.,* 813 P.2d 736 (Colo.1991); *People in Interest of M.L.M.,* 104 P.3d 324 (Colo. App.2004); *see People v. James,* 178 Colo. 401, 497 P.2d 1256 (1972)(if two statutory provisions appear to conflict, the reviewing court must attempt to construe the statutes in a manner that will avoid the conflict).

However, when two acts are clearly irreconcilable, the more specific statute controls. *See* § 2–4–205, C.R.S.2005 (providing that if there is an irreconcilable conflict between two provisions, the special or local provision prevails); *Frazier v. People,* 90 P.3d 807, 812 (Colo.2004)("When two statutes conflict directly and irreconcilably, the General Assembly requires us to apply the statute enacted late[r] in time."); *Delta Sales Yard v. Patten,* 892 P.2d 297 (Colo.1995)(it is a well-accepted principle of statutory construction that in the case of conflict, a more specific statute controls over a more general one).

Because the language in § 14–5–104(a) is identical to that contained in § 103 of the Model Uniform Interstate Family Support Act (Model Act), in construing its meaning we are guided by the comments of the National Conference of Commissioners on Uniform State Laws. *Cf. Forma Scientific, Inc. v. BioSera, Inc.,* 960 P.2d 108, 116 (Colo. 1998)(court looked to the Colorado committee comments following the evidentiary rules for guidance in interpreting those rules, stating: "[W]hile a comment cannot override the plain meaning of a rule, we regard the comments following our evidentiary rules as authoritative sources on the meaning and application of those rules.").

The comment to § 103 of the Model Act states:

The existence of procedures for interstate establishment, enforcement, or modification of support … does not preclude the application of the general law of the forum. *Even if the parents live in different states,*

*for example, a petitioner may decide to file an original. action for child support (and most likely for other relief as well) directly in the state of residence of the respondent and proceed under that forum's generally applicable support law. In so doing, the petitioner thereby submits to the personal jurisdiction of the forum and foregoes reliance on UIFSA. Once a child support order has been issued, this option is no longer available to interstate parties.* Under UIFSA, a state may not permit a party to proceed to obtain a second support order; rather, in further litigation the tribunal must apply the Act's provisions for enforcement of an existing order and limit modification to the strict standards of UIFSA.

John J. Sampson, *Uniform Interstate Family Support Act (1996) (with More Unofficial Annotations),* 32 Fam. L.Q. 390, 418–19 (1996)(emphasis added); *see also* John J. Sampson & Paul M. Kurtz, *UIFSA: An Interstate Support Act for the 21st Century,* 27 Fam. L.Q. 85, 111 (1993).

The comment clarifies that UIFSA does not preclude a custodial parent from initiating a child support action under the general law of the forum. But that option is not available where a child support order has already been issued in another state. Further, commentators such as Sampson and Kurtz, who were co-reporters for UIFSA, have explained the requirement that a parent not using UIFSA must pursue his or her child support action where the obligor-parent resides:

UIFSA has never been the exclusive procedure for an obligee to seek a support order against an obligor residing in another state. *UIFSA continues as an alternative choice to the employment of private counsel in the state of residence of the obligor and proceeding under the law of that forum* to establish a support order.

Sampson & Kurtz, *supra,* 27 Fam. L.Q. at 111 n. 39 (emphasis added).

Section 611 of the Model Act is entitled "Modification of Child Support Order of Another State," and the comment to that section states, as relevant here:

Under UIFSA a tribunal may modify an existing child support order of another state only if certain quite limited conditions are met. First, the tribunal must have all the prerequisites for the exercise of personal jurisdiction required for rendition of an original support order.... *UIFSA establishes a set of "bright line" rules which must be met before a tribunal may modify an existing child support order.* The intent is to eliminate multiple support orders to the maximum extent possible consistent with the principle of continuing, exclusive jurisdiction that pervades the Act.

....

The [changes in UIFSA] contemplate that the issuing state has lost continuing, exclusive jurisdiction and that *the obligee may seek modification in the obligor's state of residence, or that the obligor may seek a modification in the obligee's state of residence. This restriction attempts to achieve a rough justice between the parties in the majority of cases by preventing a litigant from choosing to seek modification in a local tribunal to the marked disadvantage of the other party.* For example, an obligor visiting the children at the residence of the obligee cannot be validly served with citation accompanied by a motion to modify the support order [because] the motion to modify does not fulfill the requirement of being brought by "a [petitioner] who is a nonresident of this State ...." *In short, the obligee is required to register the existing order and seek modification of that order in a state which has personal jurisdiction over the obligor other than the state of the obligee's residence.*

Sampson, *supra,* 32 Fam. L.Q. at 503–05 (emphasis added).

This point is driven home in a footnote to the comment to § 611, which states:

*Under this "cross-over jurisdiction," both parties are constrained from seeking a hometown modification; rather the movant must initiate such litigation on the other's turf.* Under the system in place for the original order, in those instances in which the parties began in the same state,

the party who moves from the issuing state is the one who bears the burden of litigating in a foreign forum. This is thought to be a fair compromise .... But when both parties move, the burden to litigate in a distant forum is placed on the individual who is seeking the modification. In short, there is a perfectly valid order in existence, and the person who seeks to change it bears the burden of litigating at a distance.

Sampson, *supra,* 32 Fam. L.Q. at 505–06 n. 211 (emphasis added); *see Jurado v. Brashear, supra,* 782 So.2d at 581 n. 12 ("UIFSA prevents the seeking of modification in a hometown tribunal.").

■ It is clear from the text of UIFSA and the comments of the commissioners that where, as here, a Colorado petitioner seeks to modify a child support order entered in another state that no longer has exclusive jurisdiction over child support, and the obligor resides elsewhere, the motion to modify child support must be filed in the state where the obligor resides. In this case, that is the State of Washington.

We therefore conclude the district court correctly ruled that it lacked jurisdiction over mother's action and properly dismissed it.

In reaching our conclusion, we acknowledge that numerous Colorado appellate decisions have recognized that the obligee of a child support order may commence an action in Colorado under § 14–11–101 to modify child support:

[The obligee commences the action] by docketing exemplified copies of all written pleadings, court orders, judgments, and decrees which comprise the case in the state of origin, and, after personal jurisdiction is obtained upon the obligor, the district court of Colorado will have complete jurisdiction over the subject matter and the persons to the same extent as if the case had been originally filed in Colorado. *Under this procedure, the Colorado court will have the power to amend, modify, set aside, and enforce any existing foreign orders to the full extent of its powers under Colorado law.*

*Henry v. Knight,* 746 P.2d 1375, 1377 (Colo.App.1987)(emphasis added); *see Glickman v. Mesigh,* 200 Colo. 320, 615 P.2d 23, 26 n. 2 (1980) ("A proceeding to enforce a foreign judgment of support under section 14–11–101 ... is *one of several remedies* available to a custodial parent seeking support from a non-custodial parent."); *see also In re Marriage of Ness, supra.* Most of these cases preceded the enactment of Colorado's version of UIFSA.

We have found only two published cases announced since UIFSA was enacted in Colorado that address § 14–11–101, and neither involved modification of child support. The petitioners in both *In re C.G.G.,* 946 P.2d 603 (Colo.App.1997), and *In re Marriage of Orr,* 36 P.3d 194 (Colo.App.2001), only sought orders establishing and enforcing child support orders entered in other jurisdictions.

In *People in Interest of A.K.,* 72 P.3d 402, 404 (Colo.App.2003), the division stated: "While UIFSA does not appear to apply to persons who are not residents of a 'state' ... its remedies are cumulative and do not affect remedies available under other laws." However, that action was brought by the Colorado Department of Human Services, on behalf of an obligee-mother, to establish a duty of child support and to determine arrearages. It was not an action to modify child support.

We read these cases as standing for the proposition that a custodial parent may *establish or enforce* a child support action either under § 14–11–101 or under UIFSA, provided that personal service can be obtained over the obligor. *See* § 14–5–201, C.R.S.2005. However, if the obligor does not reside in Colorado and UIFSA applies to an existing child support order, UIFSA preempts § 14–11–101 to the extent that the state statute permits modification of the order. Angela R. Arkin, *Colorado's Uniform Interstate Family Support Act: 2004 Changes and Clarifications,* 33 Colo. Law. 99 (Nov.2004).

Accordingly, § 14–11–101 is still available and permits the modification of existing child support orders in circumstances where UIFSA does not apply. For example, if both the obligor and the obligee spouse are residents of Colorado, either spouse may seek modifi-

cation of an existing child support order entered in another state under § 14–11–101. However, a different situation occurs where the obligee is a resident of this state, the obligor is a nonresident, and a child support order was entered in another state.

In *Bordelon v. Dehnert, supra,* the Louisiana court addressed the issue before us. The parties there were divorced in Virginia, and an order was entered awarding custody and child support to the father. He and the child later moved to Louisiana, where he filed a motion to modify the Virginia child support order. The trial court concluded it lacked subject matter jurisdiction over the child support issue.

On appeal, the father argued that he did not bring his action under UIFSA, but pursuant to another Louisiana statute authorizing such relief. He relied on a Louisiana statute similar to § 14–5–104 and § 104 of UIFSA, which provide that the remedies in UIFSA are cumulative and do not affect the availability of remedies under other law. The Louisiana Court of Appeals rejected his argument, reasoning as follows:

> This court has recently held that subject matter jurisdiction with regard to the issue of child support is governed by Louisiana's version of the UIFSA. The UIFSA shall be applied and construed to effectuate its general purpose to make uniform the law with respect to family support among states that have enacted the uniform act. *Allowing a litigant to pick and choose between UIFSA and other state laws in instances when UIFSA applies to bar subject matter jurisdiction clearly would undermine the general purpose of the UIFSA and would not further uniformity in interstate enforcement of child support orders.*
>
> ....
>
> To further national uniformity regarding the enforcement of child support orders, Congress required that all states adopt UIFSA by January 1, 1998. The Louisiana legislature enacted the UIFSA ... effective January 1, 1996. Thus, UIFSA is designed to be an improvement over URESA. *We cannot accept that both Congress and the Louisiana legislature intended to*

*allow a litigant to circumvent the concept of continuing, exclusive jurisdiction by simply declaring that the litigant is proceeding pursuant to another provision.* Further, UIFSA is the latest expression of the legislative will and a specific provision which applies to the facts and circumstances of this matter. The rules of statutory construction provide that where two statutes deal with the same subject matter, they should be harmonized if possible, but when two acts are clearly irreconcilable, then the late[r] enactment should be applied.

*Bordelon v. Dehnert,* 770 So.2d at 436 (emphasis added; citations and footnote omitted).

We agree with the Louisiana court's reasoning and adopt it as our own. *See Gentzel v. Williams, supra; Phillips v. Fallen,* 6 S.W.3d 862, 865 (Mo.1999)(concluding state of Washington lacked jurisdiction to modify a foreign child support order).

■ Accordingly, where, as here, a child support order was entered in another state, the obligee is a resident of this state, and the obligor is a nonresident, we conclude UIFSA controls to the extent the requirements for modification of child support in UIFSA and the remedy allowed by § 14–11–101 differ. A litigant may not "pick and choose between UIFSA and other state laws in instances when UIFSA applies to bar subject matter jurisdiction." *Bordelon v. Dehnert, supra,* 770 So.2d at 436; *see Arkin, supra.*

We therefore conclude the district court did not err in dismissing, for lack of subject matter jurisdiction, mother's action seeking to docket the foreign support order and her motion for modification of child support under § 14–11–101.

Orders affirmed.

TAUBMAN and RUSSEL, JJ., concur.