**Thomas LOAR and Donna Loar,
Petitioners–Appellants,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a/k/a State Farm Insurance Company, Respondent–Appellee.**

No. 04CA2511.

Colorado Court of Appeals,
Div. IV.

April 6, 2006.

Rehearing Denied May 18, 2006.*

Certiorari Denied Oct. 16, 2006.

* Furman, J., would GRANT.

Darrell S. Elliott, P.C., Darrell S. Elliott, Jerold Hart, Denver, Colorado, for Petitioners–Appellants.

Patterson, Nuss & Seymour, P.C., Franklin D. Patterson, Craig S. Nuss, William P. Boyle, Englewood, Colorado, for Respondent–Appellee.

VOGT, J.

Petitioners, Thomas Loar and Donna Loar, appeal the trial court's summary judgment in favor of respondent, State Farm Mutual Automobile Insurance Company. We reverse and remand for further proceedings.

Petitioners purchased an automobile policy from State Farm in 1998. The policy provided bodily injury liability coverage and uninsured-underinsured motorist (UM/UIM) coverage, both with limits of $25,000 per person and $50,000 per accident.

In August 2000, petitioner Donna Loar was injured in an automobile accident while she was in the course and scope of her employment. After receiving workers' compensation benefits and a settlement from the other driver's liability insurer, Donna Loar made a claim for underinsured motorist benefits under her State Farm policy. State Farm denied the claim because the other driver's liability coverage limit of $30,000 exceeded petitioners' $25,000 UM/UIM coverage limit, and the other driver was thus not "underinsured."

Petitioners then brought this action. As relevant here, they sought a declaratory judgment that UM/UIM coverage of $100,000 per person and $300,000 per accident was available to them under their State Farm policy because State Farm had never informed them that they could purchase UM/UIM coverage at a level higher than the minimum statutorily required $25,000 per person and $50,000 per accident.

State Farm moved for summary judgment, asserting that it had no duty to offer petitioners UM/UIM limits in excess of the $25,000/$50,000 bodily injury liability limits they had selected. The trial court granted the motion. It concluded that the motion presented only a question of law and that the UM/UIM statute "did not require State Farm to offer UM/UIM limits over the bodily injury limits of $25,000/$50,000."

### I.

Petitioners contend on appeal that the trial court erred in entering summary judgment in favor of State Farm. We agree.

Summary judgment is appropriate only if the pleadings and supporting documents demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. The nonmoving party is entitled to the benefit of all favorable inferences that may be drawn from the undisputed facts, and all doubts as to the existence of a triable issue of fact must be resolved against the moving party. We review a summary judgment de novo. *Martini v. Smith*, 42 P.3d 629 (Colo.2002); *see* C.R.C.P. 56(c).

### A.

■ Petitioners contend State Farm had a duty to inform them, when they purchased their policy, that they could purchase UM/

UIM coverage with limits higher than the statutory minimum. We agree.

Section 10–4–609, C.R.S.2005, requires insurance companies issuing automobile liability policies to include UM/UIM coverage in their policies unless the named insured rejects such coverage in writing. *See Aetna Casualty & Surety Co. v. McMichael,* 906 P.2d 92 (Colo.1995); *Richardson v. Farmers Ins. Exchange,* 101 P.3d 1138 (Colo.App. 2004). Section 10–4–609(1)(a), C.R.S.2005, states, in pertinent part:

No automobile liability ... policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state ... unless coverage is provided ... in limits for bodily injury or death set forth in section 42–7–103(2), C.R.S. [2005] ... for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles ...; except that the named insured may reject such coverage in writing.

Under § 10–4–609(4), C.R.S.2005, uninsured motorist coverage includes underinsured motorist coverage.

The purpose of § 10–4–609 is to ensure that Colorado motorists are "afforded an opportunity to protect themselves from losses resulting from the negligent conduct of financially irresponsible operators of motor vehicles." *Passamano v. Travelers Indemnity Co.,* 882 P.2d 1312, 1321 (Colo.1994).

However, UM/UIM coverage is not mandatory, and individual insureds are free to decline it. Further, the statute does not require full indemnification of losses suffered at the hands of uninsured motorists under all circumstances. Rather, the intent is to put a person injured by an uninsured or underinsured motorist in the same position as one injured by a tortfeasor insured in compliance with the law. *Cruz v. Farmers Ins. Exchange,* 12 P.3d 307 (Colo.App.2000); *see Terranova v. State Farm Mutual Automobile Ins. Co.,* 800 P.2d 58 (Colo.1990). In effect, UM/UIM coverage limits act as a replacement for the liability policy limits of an underinsured motorist who is at fault in a motor vehicle accident. *DeHerrera v. Sentry Ins. Co.,* 30 P.3d 167 (Colo.2001).

The dispute in this case concerns § 10–4–609(2), C.R.S.2005, which states, in relevant part:

Prior to the time the policy is issued or renewed, the insurer shall offer the named insured the right to obtain higher limits of uninsured motorist coverage in accordance with its rating plan and rules, but in no event shall the insurer be required to provide limits higher than the insured's bodily injury liability limits or one hundred thousand dollars per person and three hundred thousand dollars per accident, whichever is less.... For purposes of this subsection (2), underinsured motorist coverage is included in the term "uninsured motorist coverage" pursuant to subsection (4) of this section.

In *Allstate Ins. Co. v. Parfrey,* 830 P.2d 905, 912–13 (Colo.1992)(*Parfrey* ), the supreme court held that, in light of the statute's purpose to "provide ... the driving public with an opportunity to make an informed decision on an appropriate level of UM/UIM coverage," § 10–4–609(2) would be construed as "creating a one-time duty upon an insurer" to "inform an insured in a reasonable manner calculated to permit the insured to make an informed decision on whether to purchase UM/UIM coverage offered by the insurer at a level higher than the minimum statutory liability limits." In *DeHerrera, supra,* 30 P.3d at 174, the supreme court elaborated further on the purpose of § 10–4–609(2):

[T]he statute requires an insurer to offer an insured the opportunity to purchase more than the minimum UM/UIM insurance because of the effect of the statute in an instance where both parties carry policies with the minimum limits of coverage. In such a case, replacing liability limits of a tortfeasor with UM/UIM limits of an injured insured would not create any additional benefit for the injured insured. An injured insured would still only receive $25,000 to cover her personal injuries even if her damages exceeded that amount. If

insurers were not required to offer UM/UIM insurance at higher levels than the minimum liability insurance, then the intent of the statute to protect insureds against the risk of inadequate compensation for injur[i]es caused by an underinsured motorist would be frustrated.

(Citation omitted.)

■ In opposition to State Farm's summary judgment motion in this case, Donna Loar submitted an affidavit stating that she had not been informed when she purchased the State Farm policy in 1998 that she could elect to purchase UM/UIM coverage "in the amount of $100,000/$300,000." State Farm did not dispute that statement. Rather, it argued in reply, and continues to assert on appeal, that because petitioners selected the minimum bodily injury liability coverage, it was not obligated under the statute to offer them UM/UIM coverage in excess of that amount. State Farm cites the language in § 10–4–609(2) limiting its obligation to provide UM/UIM coverage ("but in no event shall the insurer be required to provide limits higher than the insured's bodily injury liability limits . . ."), and it argues that "no goal or legislative intent is furthered by requiring State Farm to offer coverage that it has no duty to provide." State Farm also asserts that *Parfrey* is limited to situations in which an insured increases bodily injury liability coverage—which petitioners did not do here. We are not persuaded.

Section 10–4–609(2) does not make the obligation to inform contingent upon the insured's purchase of bodily injury liability coverage in excess of the statutory minimum. Rather, the duty to inform of or "offer . . . the right to obtain" higher UM/UIM coverage is stated broadly in the first and second clauses of § 10–4–609(2); and the following clause, on which State Farm relies, is not a limit on that duty, but on the amount of coverage that the insurer must ultimately provide. The General Assembly chose to use "offer" in one clause and "provide" in the subsequent clause; and we must presume its use of the different terms was intentional. *See Carlson v. Ferris,* 85 P.3d 504 (Colo. 2003)(courts do not presume that legislature used language idly and with no intent that

meaning be given to it; rather, use of different terms signals legislature's intent to afford those terms different meanings). Further, while the "but in no event" clause does not alter the insurer's obligation to inform, it bears significantly on the insurer's coverage obligation, as set forth in Part I(B), below.

Moreover, cases from the supreme court and this court that have discussed the § 10–4–609(2) "one-time duty to inform" have not recognized any limitation on that duty where the insured initially purchases only the minimum bodily injury liability coverage. *See DeHerrera, supra; Aetna Casualty & Surety Co. v. McMichael, supra; Passamano v. Travelers Indemnity Co., supra; Parfrey, supra; Richardson v. Farmers Ins. Exchange, supra.* In *Parfrey,* the supreme court recognized that the insurer was not obligated to provide UM/UIM coverage of more than $25,000 per person and $50,000 per accident when the insureds purchased their initial policy, because the insureds had purchased only that amount of liability coverage. However, the court continued, summary judgment was nevertheless improper:

> What is disputed, however, is whether Allstate, *prior to the issuance of the policy in March 1985,* informed the Parfreys that they could increase their UM/UIM coverage by increasing their liability coverage and that they could purchase UM/UIM coverage at the same level as their liability coverage up to a maximum of $100,000 per person and $300,000 per accident. The evidence also is in dispute on whether Allstate discharged its duty of notification and offer either when the Parfreys later modified their liability coverage or when they received their six-month renewal notices on their policy.

*Parfrey, supra,* 830 P.2d at 914–15 (emphasis supplied). Thus, the *Parfrey* court recognized that the one-time duty to inform insureds about the potential for increased UM/UIM coverage also applies where insureds select only the minimum liability coverage at the time of their initial purchase.

Finally, accepting State Farm's position would not advance the General Assembly's intent in enacting § 10–4–609(2)—namely, to provide the driving public with the opportu-

nity to make an informed decision on the appropriate level of UM/UIM coverage. *See Parfrey, supra.*

In sum, because State Farm was not excused from its duty to inform petitioners of "the nature and purpose of UM/UIM coverage," *Parfrey, supra,* 830 P.2d at 912, so that they could make an informed decision on whether to purchase higher UM/UIM coverage, State Farm was not entitled to summary judgment on this basis. However, given the limited record before us and the absence of any motion by petitioners for summary judgment, we decline to direct entry of judgment as petitioners have requested. Rather, we remand the case to the trial court to determine whether State Farm in fact notified petitioners of the availability of higher UM/UIM coverage; if so, whether the notification satisfied the requirements outlined in *Parfrey* for notification reasonably calculated to permit a potential purchaser to make an informed decision; and, if not, what remedy should be afforded for State Farm's failure to do so.

### B.

■ Because the issue may arise on remand, we briefly address, and reject, petitioners' additional contention that, if they so elect, they should be given the opportunity to purchase UM/UIM coverage with limits in excess of their own bodily injury liability limits.

Relying on the passage from *DeHerrera* cited above, petitioners argue that the intent of the statute is frustrated if insureds are required to raise their own bodily injury liability limits in order to "be protected against injury by an underinsured motorist who maintains only the minimum of $25,000/$50,000 in bodily injury liability limits." However, accepting petitioners' argument would read out of § 10–4–609(2) the phrase that the insurer shall "in no event ... be required to provide [UM/UIM] limits higher than the insured's bodily injury liability limits." It would also be inconsistent with the supreme court's recognition, in *Parfrey,* that the insurer was initially obligated to provide UM/UIM coverage only up to the amount of the insured's liability coverage, and that the

way to increase UM/UIM coverage was to increase liability coverage.

Finally, petitioners suggest that the legislative history of § 10–4–609(2)—and particularly, the history of the 1992 amendments to that provision—would support their proposed statutory construction. However, even assuming legislative history would be relevant in light of the clear language of § 10–4–609(2), petitioners they cite no specific legislative history, and our own review of that history has revealed nothing that would add to the discussion of legislative history in *Passamano v. Travelers Indemnity Co., supra,* and the other cases discussed above. Contrary to petitioners' argument, those cases recognize that the legislative intent underlying § 10–4–609 does not require full indemnification of losses suffered at the hands of uninsured or underinsured motorists in all circumstances. *See Terranova v. State Farm Mutual Automobile Ins. Co., supra; Cruz v. Farmers Ins. Exchange, supra; see also Alliance Mutual Casualty Co. v. Duerson,* 184 Colo. 117, 123, 518 P.2d 1177, 1180 (1974) (discussing legislative purpose underlying uninsured motorist statute and observing: "Had the legislature intended full indemnification it would not have granted the option of totally rejecting the uninsured motorist coverage.").

Thus, we conclude that, under § 10–4–609(2), petitioners are not entitled to obtain enhanced UM/UIM coverage without raising their own bodily injury liability limits. Any change in that statute is a matter for the General Assembly.

### II.

Petitioners request an award of their appellate attorney fees and costs "pursuant to statute, as may be applicable herein." Although petitioners are entitled to an award of their costs pursuant to C.A.R. 39(a), we are aware of no statute that would entitle them to attorney fees. *See Hawes v. Colorado Division of Insurance,* 65 P.3d 1008 (Colo.2003)(attorney fees cannot be recovered in absence of express statute, rule, or private contract to the contrary); *Thurman v. State Farm Mutual Automobile Ins. Co.,*

942 P.2d 1327 (Colo.App.1997)(§ 10–4–609 includes no provision for recovery of attorney fees from either an uninsured motorist or a UM/UIM insurance provider).

The judgment is reversed, and the case is remanded for further proceedings in accordance with the views expressed here.

Judge CASEBOLT concurs.

Judge FURMAN dissents.

Judge FURMAN dissenting.

I respectfully dissent.

This case centers on a determination of whether uninsured-underinsured motorist (UM/UIM) coverage of $100,000 per person and $300,000 per accident is available to petitioners, Thomas Loar and Donna Loar, because State Farm Mutual Automobile Insurance Company had never informed the Loars that they could purchase UM/UIM coverage at a level higher than the minimum statutorily required $25,000 per person and $50,000 per accident.

The majority relies on *Allstate Insurance Co. v. Parfrey,* 830 P.2d 905 (Colo.1992), to hold that the Loars should be able to retroactively increase their bodily injury liability coverage and, consequently, their UM/UIM coverage, to $100,000 per person and $300,000 per accident, notwithstanding that the Loars had chosen the minimum bodily injury liability coverage of $25,000 per person and $50,000 per accident. I do not read *Parfrey* so broadly.

In *Parfrey,* the insureds had twice raised their bodily injury liability coverage to levels above the minimum bodily injury liability coverage required by statute, but were never informed of their option to purchase UM/UIM coverage at a level higher than the minimum statutory liability limits. The supreme court held that it was error for the trial court to grant summary judgment because genuine issues of fact existed concerning whether "the two renewal notices sent by Allstate to the Parfreys included information advising them of their right to obtain increased UM/UIM coverage at a level consistent with their increased liability coverage." *Parfrey, supra,* 830 P.2d at 915.

Here, it was undisputed that the Loars chose to purchase the minimum bodily injury liability coverage of $25,000 per person and $50,000 per accident. It was also undisputed that the Loars had never increased their bodily injury liability coverage. In my view, allowing the Loars the choice of increasing their bodily injury liability coverage at this point, and therefore obligate State Farm to provide increased UM/UIM coverage, would contravene the express language of § 10–4–609(2), C.R.S.2005.

Subsection (2) of § 10–4–609 limits the insurer's duty to provide UM/UIM coverage to the same level as the insured's chosen bodily injury liability coverage. It provides:

> Prior to the time the policy is issued or renewed, the insurer shall offer the named insured the right to obtain higher limits of uninsured motorist coverage in accordance with its rating plan and rules, *but in no event shall the insurer be required to provide limits higher than the insured's bodily injury liability limits* or one hundred thousand dollars per person and three hundred thousand dollars per accident, whichever is less.

(Emphasis added.)

Here, because the other driver's liability coverage limit of $30,000 exceeded the Loars' $25,000 UM/UIM coverage limit, the other driver was not "underinsured." I would therefore affirm the trial court's summary judgment.