### In re the MARRIAGE OF Charles Anthony GALLEGOS, Appellee,

### and

### Jennifer BACA–GALLEGOS, Appellant,

### and

### Gloria Gallegos and Leroy Gallegos, Intervenors–Appellees.

### No. 09CA2015.

Colorado Court of Appeals, Div. II.

Sept. 16, 2010.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2009.

No Appearance for Appellee.

Litvak Litvak Mehrtins & Epstein, P.C., Wendy J. Smock, Paula J. Smith, for Appellant.

No Appearance for Intervenors–Appellees.

Opinion by Chief Judge DAVIDSON.

In this post-dissolution action between Charles Anthony Gallegos (father) and Jennifer Baca–Gallegos (mother), mother appeals from the trial court's order denying her request for an award of the attorney fees she incurred defending against the unsuccessful petition of Gloria and Leroy Gallegos, intervenors, for court-ordered grandparent visitation with the parties' minor child. We affirm.

## I. Background

The parties' marriage ended by decree in July 2008. Father was in the military and stationed out of state. The intervenors are his parents and the grandparents of the parties' minor child. The trial court permitted them to intervene in the dissolution action and petition for visitation in excess of the time mother was already allowing them to spend with the child. Following an evidentiary hearing, the trial court denied the grandparents' petition, concluding that it had no authority under the circumstances to override mother's decisions regarding the amount of time the child was to spend with her grandparents. The trial court subsequently denied mother's request for her attorney fees under sections 19–1–117(3) and 14–10–119, C.R.S.2010, concluding that neither statute entitled her to recover attorney fees in this case.

## II. Authority to Award Attorney Fees

Mother argues that the trial court erred by determining that it had no authority to award her any portion of her attorney fees under either section 19–1–117(3) or section 14–10–119. Whether either statute authorizes the court to award mother's attorney fees against the grandparents in connection with their initial grandparent visitation request is a question of first impression. We conclude that the trial court correctly determined that neither statute authorized it to award mother her attorney fees.

### A. Standard of Review

We review the district court's decision to award attorney fees and costs for an abuse of discretion, but we review the legal conclusions forming the basis for that decision de novo. *Jorgensen v. Colorado Rural Props., LLC,* 226 P.3d 1255, 1259 (Colo.App.2010).

Interpretation of a statute is a question of law that we also review de novo. *In re Marriage of DeZalia,* 151 P.3d 647, 648 (Colo.App.2006). When we interpret a statute, our goal is to give effect to the intent of the General Assembly. We first look to the plain language of the statute and, if the statutory language is clear and unambiguous, we apply it as written without resorting to interpretive rules of statutory construction. *In re Marriage of Rozzi,* 190 P.3d 815, 824 (Colo.App.2008). However, we may look to the rules of statutory construction as an aid. *In re Marriage of Pickering,* 967 P.2d 164, 165 (Colo.App.1997). One of those rules requires that we adopt an interpretation that gives consistent, harmonious, and sensible effect to all the parts of a statutory provision. *In re Marriage of Ikeler,* 161 P.3d 663, 667 (Colo.2007).

## B. The American Rule

Colorado follows the traditional rule that parties in a lawsuit are required to bear their own legal expenses unless attorney fees may be awarded under a statute, a court rule, or an express contractual provision (the American Rule). *In re Marriage of Sanchez–Vigil,* 151 P.3d 621, 623 (Colo.App.2006). Statutes in derogation of the American Rule must be strictly construed. *See Sotelo v. Hutchens Trucking Co.,* 166 P.3d 285, 287 (Colo.App. 2007) (statute granting a defendant the right to attorney fees upon the dismissal of a plaintiff's tort action must be strictly construed because it is in derogation of the American Rule).

## C. Section 19–1–117(3)

Section 19–1–117, C.R.S.2010, provides that a grandparent, satisfying certain preconditions, may seek a court order granting reasonable grandchild visitation and the court shall enter such an order if it finds that the visitation will be in the child's best interests. The grandparent may either initiate a new action or intervene in an existing dissolution action. *See In the Interest of K.L.O–V.,* 151 P.3d 637, 641 (Colo.App.2006). The statute is divided into five subsections, which address, respectively, (1) under what circumstances a grandparent my request court-ordered visitation rights, (2) the procedure for doing so, (3) subsequent or repeated visitation requests, (4) modification and termination of visitation rights, and (5) the effect of subsequent parenting time orders on visitation rights.

Only subsection (3), which addresses subsequent requests for grandparent visitation, addresses attorney fees. Subsection (3) specifically permits a court to award attorney fees to the prevailing party:

> No grandparent may file an affidavit seeking an order granting grandchild visitation rights more than once every two years absent a showing of good cause. If the court finds there is good cause to file more than one such affidavit, it shall allow such additional affidavit to be filed and shall consider it. *The court may order reasonable attorney fees to the prevailing party.* The court may not make any order restricting the movement of the child if such restriction is solely for the purpose of allowing the grandparent the opportunity to exercise his grandchild visitation rights.

(Emphasis added.)

Mother contends that subsection (3) authorizes courts to award attorney fees in all requests for grandparent visitation, including initial requests. Accordingly, she contends the court erred by concluding that subsection (3) did not apply to initial requests and, therefore, failing to exercise its discretion to decide whether to award her attorney fees. For several reasons, we disagree.

Initially, we note, as did the trial court, the attorney fee provision in subsection (3) immediately follows language restricting the frequency of a grandparent's visitation request and requiring a showing of good cause. Thus, the provision appears to limit an award of attorney fees to requests made after an initial visitation determination.

More important is the broader contextual placement of the provision within the statute. Had the General Assembly intended for the attorney fee provision to apply to all grandparent visitation requests, both initial and subsequent, it could have made this intention clear in a number of alternative ways, such as: (1) including a reference to attorney fees in the first two subsections, which apply to all requests; (2) including language in subsection (3) specifying that the recovery of attorney fees applies whether or not a prior request has been brought; or (4) including a separate subsection that would allow the award of attorney fees where appropriate regardless of whether an original or repeat request was filed. Its choice to do none of these things indicates its intent to disallow attorney fee awards for initial requests. *See Tatum v. Basin Res., Inc.,* 141 P.3d 863, 871 (Colo.App.2005) (courts may neither interpolate into a statute words that it does not contain nor extract a meaning which is not expressed by it).

Further, the placement by the General Assembly of the attorney fee provision in the portion of the statute concerning subsequent requests for grandparent visitation reflects its intent to protect parents and children

from repetitive litigation. *See In re Marriage of Vivens,* 885 P.2d 301, 304–05 (Colo. App.1994) (obvious purpose of statute awarding attorney fees to the prevailing party where an objection to a wage assignment has been filed is to discourage any exaggerated claims or attempts to delay the payment of valid child support obligations). Indeed, legislative history confirms that the General Assembly included the attorney fee provision as a safeguard to protect against repetitive filings by grandparents. Hearings on S.B. 80–124 before the House Judiciary Comm., SCR 320C, 52d Gen. Assemb., 2d Sess. (Feb. 11, 1980) (statement of Sen. Stewart); Hearing on S.B. 80–124 before the H. Floor on Second Reading, 52d Gen. Assemb., 2d Sess. (Mar. 17, 1980) (statement of Rep. Traylor).

Although mother suggests that such protection also should be available for initial grandparent visitation requests, we note that the statute authorizing attorney fee awards for frivolous suits already provides some protection, and conclude that whether to provide additional protection against justified but ultimately unsuccessful visitation requests is for the legislature, not the court, to determine. § 13–17–102, C.R.S.2010; *see, e.g., Loar v. State Farm Mut. Auto. Ins. Co.,* 143 P.3d 1083, 1087 (Colo.App.2006) (any change in a statute whose clear language permits insurer to require insureds to raise their own bodily injury liability limits to obtain enhanced uninsured motorist coverage is a matter for the General Assembly).

Mother also suggests that to interpret subsection (3) as authorizing attorney fees awards only for unsuccessful subsequent requests would contradict the effect of its last sentence, which forbids a court from restricting a child's movement solely to allow a grandparent to exercise visitation rights. Mother asserts that this prohibition applies to both initial and subsequent grandparent visitation requests. We disagree. To the contrary, the provision plainly states that it applies when a grandparent has visitation *rights,* which means the grandparent must have already successfully requested court-ordered visitation.

Thus, reading the sentence in the context of the entire subsection, we understand it to address the situation where a change occurs, such as a parent's relocation, that will interfere with an existing visitation order. When such a conflict arises, the last sentence prevents the court from enforcing the visitation by restricting the child's movement. And, contrary to mother's contention, reading the sentence in this manner does not allow a court to restrict the child's movement if such restriction otherwise was not in the child's best interests. *See In re Adoption of C.A.,* 137 P.3d 318, 324–28 (Colo.2006) (grandparent visitation statute requires the court to apply a presumption in favor of parental visitation determination which can only be rebutted if grandparents show through clear and convincing evidence that the parental determination is not in child's best interests).

### D.   Section 14–10–119

█  Alternatively, mother contends that the court was authorized to award her attorney fees pursuant to section 14–10–119, C.R.S.2010. Again, we disagree.

Section 14–10–119 provides that,

> The court from time to time, after considering the financial resources of both parties, may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending *any proceeding under this article* and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment.

(Emphasis added.)

The purpose of section 14–10–119 is to allow the court to apportion costs and fees equitably between the spouses based on their relative financial positions. *In re Marriage of Shapard,* 129 P.3d 1007, 1010 (Colo.App. 2004). The statute applies in non-parent parental responsibility allocations and child support proceedings brought under article 10 of title 14. *See Abrams v. Connolly,* 781 P.2d 651 n. 7 (Colo.1989) (recognizing the district court's authority to order father to pay intervenors' attorney fees and court costs under section 14–10–119 that were incurred in a child support proceeding); *In re Custody of C.J.S.,* 37 P.3d 479, 481 (Colo.App.

2001) (holding that mother had standing to seek an award of attorney fees from the grandparents under section 14–10–119 in a custody proceeding authorized by section 14–10–123, C.R.S.2010).

However, we conclude, as did the trial court, that because the statutory basis for the grandparents' visitation request was section 19–1–117, mother did not incur attorney fees in a proceeding under article 10 of title 14, and therefore, could not seek an award under section 14–10–119 despite the fact that grandparents pursued their visitation request by intervening in the dissolution proceeding.

Section 14–10–123(1), C.R.S.2010, affords standing to non-parents to seek parental responsibilities only in limited circumstances. *See* §§ 14–10–123(1)(b)–(c), C.R.S.2010; *In re C.T.G.*, 179 P.3d 213, 217 (Colo.App.2007) (General Assembly has spoken and has established only limited circumstances in which a person other than a parent may be awarded visitation rights to a child). The standing requirements constitute legislative recognition of the importance of psychological parenting to the best interests of a child. *In re Reese*, 227 P.3d 900, 902 (Colo.App.2010). Although the adoption of section 19–1–117 also recognizes that grandparents often undertake parental-type roles in the family when the parental relationship is disrupted or impaired, *see In re Adoption of C.A.*, 137 P.3d at 323, the General Assembly intended the statute as a means to provide grandparents with an opportunity to seek visitation under appropriate circumstances without also enabling them to acquire custodial rights. Hearings on S.B. 80–124 before the House Judiciary Comm., SCR 320C, 52d Gen. Assemb., 2d Sess. (Feb. 11, 1980) (statement of Sen. Stewart); Hearing on S.B. 80–124 before the S. Floor on Second Reading, 52d Gen. Assemb., 2d Sess. (Feb. 18, 1980) (statement of Sen. Stewart).

Towards that end, section 19–1–117 requires only a showing of prior court involvement to establish standing, not the assumption of a caretaking role, as required under section 14–10–123, and it authorizes an award of visitation, as compared to an allocation of parental responsibilities. *See* § 14–10–103(3), (4), C.R.S.2010 (noting change of the term "visitation" to "parenting time" and the term "custody" to "parental responsibilities"); *In re Marriage of Roosa*, 89 P.3d 524, 527 (Colo.App.2004) (effective February 1, 1999, the General Assembly enacted a statutory framework in which the term "custody" was abandoned and changed to "parental responsibilities," which includes both "decision-making responsibilities" and "parenting time," as those terms are now used). The limited scope of section 19–1–117 balances the valuable role grandparents have in the family against the awareness that parents and grandparents are not equals. *See C.A.*, 137 P.3d at 327 (a dispute between parents and grandparents regarding grandparent visitation is not a contest between equals).

Thus, because section 19–1–117 does not contemplate an award of parental responsibilities, a request pursuant to that statute does not constitute a proceeding under article 10 of title 14 for purposes of attorney fees under section 14–10–119, even when it is heard as part of a dissolution action.

Moreover, the attorney fee provision contained in section 19–1–117(3), being the more specific provision, should, in any event, control. *See* § 2–4–205, C.R.S.2010 (providing that if there is an irreconcilable conflict between two provisions, the special or local provision prevails); *In re Marriage of Hillstrom*, 126 P.3d 315, 320 (Colo.App.2005) (in the case of a conflict, the more specific statute controls over a more general one).

Accordingly, we conclude that the trial court correctly determined that neither section 19–1–117(3) nor section 14–10–119 authorized it to award mother the attorney fees she incurred successfully defending against the request for court-ordered visitation.

### III. Attorney Fees on Appeal

Based on our disposition, we also deny mother's request for her attorney fees on appeal.

The order is affirmed.

PLANK * and NEY *, JJ., concur.