25CA1125 Marriage of Moretti 01-15-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA1125
Mesa County District Court No. 20DR543
Honorable Kevin R. Kennedy, Magistrate
Honorable Jeremy Chaffin, Judge

In re the Marriage of

Emily Rose Moretti n/k/a Emily Rose Chadwick,

Appellant,

and

Michele Mike Moretti,

Appellee.

ORDER REVERSED AND CASE REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE GROVE
J. Jones and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 15, 2026

Emily Rose Moretti n/k/a Emily Rose Chadwick, Pro Se

Michele Mike Moretti, Pro Se

¶ 1 In this post-dissolution of marriage proceeding involving Emily Rose Moretti, now known as Emily Rose Chadwick (mother), and Michele Mike Moretti (father), mother appeals from the district court's adoption of the magistrate's order denying her motion to relocate with the parties' child. We reverse the order and remand the case for further proceedings.

## I. Background

¶ 2 The parties divorced in 2022 and have one child. In the permanent orders, mother was awarded sole decision-making responsibilities and the majority of parenting time. Father was allocated regular parenting time consisting of one weekend, including an overnight, every other week.

¶ 3 In November 2024, mother filed a motion to relocate with the child to Arkansas. Mother cited her new husband's need to move to Arkansas to improve the family's finances and her desire to keep the child and her two other children together as a family unit. Following a hearing, a district court magistrate found that relocation would not be in the child's best interests and denied mother's request. Mother petitioned for district court review and the district court judge adopted the magistrate's order.

1

## II. Appellate Review of District Court Orders

¶ 4     Our review of a district court's order adopting a magistrate's decision is effectively a second layer of appellate review. *In re Marriage of Sheehan*, 2022 COA 29, ¶ 22. We must accept the magistrate's factual findings unless they are clearly erroneous. *In re Marriage of Young*, 2021 COA 96, ¶ 8. However, we review de novo questions of law, including questions of statutory interpretation. *Sheehan*, ¶ 22; *In re Marriage of Gallegos*, 251 P.3d 1086, 1087 (Colo. App. 2010).

## III. Standards Governing a Post-Decree Motion to Relocate

¶ 5     Section 14-10-129(2)(c), C.R.S. 2025, establishes the procedure that the court must follow in deciding a majority or equal parent's post-decree motion to relocate. *See In re Marriage of Ciesluk*, 113 P.3d 135, 140-42 (Colo. 2005); *In re Marriage of DeZalia*, 151 P.3d 647, 650 (Colo. App. 2006). The court must consider the best interest factors in section 14-10-124(1.5)(a), C.R.S. 2025, and the relocation factors in section 14-10-129(2)(c) when evaluating the child's best interests as well as the parents' interests relative to the requested relocation. *See Ciesluk*, 113 P.3d at 140, 142-48.

¶ 6     The court must begin its analysis with each parent on equal footing and may not presume either that a child is better off or disadvantaged by relocating with the moving parent. *Id.* at 147. Each parent has the burden to persuade the court that the relocation would be in, or contrary to, the best interests of the child. *Id.* at 148. The court must disclose the reasons for its decision and make specific findings with respect to the relevant statutory factors. *Id.* at 148, 150; *see also* § 14-10-129(2)(c); C.R.C.P. 52 (district court shall "set forth the findings of fact and conclusions of law which constitute the grounds of its action").

¶ 7     We review the court's relocation decision for an abuse of discretion, *Ciesluk,* 113 P.3d at 148, meaning that we will not disturb the decision unless it is manifestly arbitrary, unreasonable, or unfair, *In re Marriage of Gibbs*, 2019 COA 104, ¶ 8.

IV.   Consideration of Mother's Participation in the Address Confidentiality Program

¶ 8     Mother first contends that the district court erred in adopting the magistrate's order because the magistrate improperly considered her participation in Colorado's address confidentiality program. We agree.

3

## A. The Address Confidentiality Program

¶ 9    Colorado's address confidentiality program, §§ 24-30-2101 to - 2115, C.R.S. 2025, was enacted to "help victims of domestic violence, a sexual offense, human trafficking, or stalking," § 24-30-2102(1.5). The program permits a participant to use "a substitute address for purposes of public records and confidential mail forwarding" when doing business with state or local government agencies, including the state judicial branch. § 24-30-2102(1.5); § 24-30-2103(13); § 24-30-2108(1). Moreover, a participant in the program is generally protected from the compelled disclosure of their actual address in court proceedings. *See* § 24-30-2111.

¶ 10    When a program participant is involved in an allocation of parental responsibilities proceeding, "[n]othing in . . . part 21, nor participation in the program, shall affect an order relating to the allocation of parental responsibilities or parenting time in effect prior to or during program participation." § 24-30-2112(1). Likewise, "[p]rogram participation . . . shall not be considered for purposes of making an order allocating parental responsibilities or parenting time; except that a court may consider practical measures to keep a program participant's actual address

confidential when making an order allocating parental responsibilities or parenting time." § 24-30-2112(2).

B.    Relevant Portions of the Magistrate's Ruling

¶ 11    When weighing whether relocation was in the child's best interests, the magistrate found that a reasonable parenting time schedule could be fashioned if mother were to relocate with the child to Arkansas. *See* § 14-10-129(2)(c)(VIII). However, the magistrate was skeptical that mother would comply with such a schedule. By way of explanation, the magistrate noted that mother had previously unilaterally withheld parenting time from father — which, in conjunction with other actions taken by mother, led the magistrate to conclude that mother would be fine "with [father] never seeing [the child] again." And while the magistrate acknowledged that mother had since followed the permanent orders, he nonetheless expressed concern that mother's "compliance was based, at least in part, on the specter of a contempt proceeding."

¶ 12    Reiterating his finding from the permanent orders, the magistrate also expressed concern about mother's ability to encourage the child's relationship with father. *See* § 14-10-

124(1.5)(a)(VI).  Noting mother's "open disdain for [f]ather," the magistrate concluded that "[i]t is clearly foreseeable that once relocation occurs, [f]ather's relationship with [the child] will wither on the vine."

¶ 13    Having noted these concerns, the magistrate turned to mother's participation in the address confidentiality program and concluded that it could hinder father's attempts to exercise his rights with respect to the child.  Specifically, the magistrate found that, because mother's address would remain confidential, father "would not know where to find her" for purposes of serving her with a contempt petition if she were to relocate to Arkansas and refuse to comply with the parenting time schedule.  The magistrate further reasoned that father would be unable to extradite mother from Arkansas if the court issued a warrant arising from mother's failure to appear at a contempt proceeding and expressed concern that mother may attempt to have an Arkansas court assume jurisdiction over the proceedings, forcing father to litigate from afar.

### C.    Discussion

¶ 14    We agree with mother that the magistrate erred by considering her participation in the address confidentiality program when

resolving the motion to relocate. The statute is clear that program participation "shall" not affect an order involving an allocation of parental responsibilities and "shall not be considered" when entering such an order. § 24-30-2112(1), (2); *see In re Marriage of Roth*, 2017 COA 45, ¶ 33 ("The word 'shall' in a statute is presumed mandatory."). Despite this unambiguous statutory prohibition, the magistrate considered mother's participation in the address confidentiality program when weighing her request to relocate with the child.

¶ 15    We acknowledge that section 24-30-2112(2) permits a court to "consider practical measures to keep a program participant's actual address confidential when making" a parenting time order. We do not, however, consider the magistrate's denial of mother's proposed relocation based — at least in part — on her participation in the program to be such a practical measure.

¶ 16    In sum, because the magistrate impermissibly considered mother's participation in the address confidentiality program, we reverse the magistrate's order denying her motion to relocate and remand the case to the district court. On remand, the court must

reconsider mother's motion without considering her participation in that program.

¶ 17    Given our conclusion that the magistrate erred by considering mother's participation in the address confidentiality program in the first instance, we need not address mother's additional contentions of error concerning other portions of the magistrate's order interpreting the statutory scheme associated with that program.

V.    Remand Instructions and Mother's Other Contentions

¶ 18    On remand, the district court should consider, as of the time of remand, the child's best interests, the section 14-10-129(2)(c) relocation factors, and the parents' interests relative to the requested relocation. *See Ciesluk,* 113 P.3d at 140, 142-48; *In re Parental Responsibilities Concerning M.W.,* 2012 COA 162, ¶ 27 (recognizing that because circumstances may have changed since the order or judgment being appealed, a child's best interests must be reweighed "based on [the] circumstances existing at the time of remand proceedings"). Therefore, although on remand the court may rely on the existing record, it should also provide the parties an opportunity to present evidence concerning the current circumstances. *M.W.,* ¶ 27.

¶ 19 The district court on remand must follow the procedure described herein for deciding mother's motion to relocate and the court must make findings sufficiently explicit to give a reviewing court a clear understanding of the basis of its order. *In re Marriage of Rozzi*, 190 P.3d 815, 822 (Colo. App. 2008); *Ciesluk*, 113 P.3d at 148 ("[T]he court must thoroughly disclose the reasons for its decision and make specific findings with respect to each of the statutory factors."). If the court again denies mother's request to relocate, and mother nevertheless wishes to relocate without the child, the court must formulate a new parenting plan based on mother's relocation. *See Ciesluk*, 113 P.3d at 148 ("[I]f the majority time parent still wishes to relocate, a new parenting time plan will be necessary.").

¶ 20 Having concluded that mother's request to relocate with the child must be reconsidered, we need not address her related assertions that the magistrate inadequately considered certain factors under sections 14-10-124(1.5)(a) and 14-10-129(c) and otherwise failed to adequately consider her interest in relocating under *Ciesluk*, 113 P.3d at 140, 142-48. Moreover, we may not consider mother's assertion that the magistrate disregarded the

mandatory domestic violence considerations under section 14-10-124(4), because she did not advance such an argument in her petition for district court review. *People in Interest of K.L-P.*, 148 P.3d 402, 403 (Colo. App. 2006). Mother, of course, may make these arguments when the court considers the parties' current circumstances in the remand proceedings.

¶ 21     Finally, because the issue may arise on remand, we reject any suggestion by mother that the court cannot consider any past refusal by her to allow father to exercise parenting time with the child. Unless an action was "to protect the child from witnessing domestic violence or from being a victim of child abuse or neglect or domestic violence," a party's unilateral withholding of parenting time or other refusal to follow a parenting time order may be indicative of that party's ability or inability "to encourage the sharing of love, affection, and contact between the child and the other party." § 14-10-124(1.5)(a)(VI).

## VI.    Disposition

¶ 22     The order is reversed, and the case is remanded for further proceedings consistent with this opinion.

JUDGE J. JONES and J. SCHUTZ concur.

10