In re the MARRIAGE OF Mourine
J. EMERSON, n/k/a Mourine
J. Weaver, Appellant,

and

Norman D. Emerson, Appellee.

No. 02CA1584.

Colorado Court of Appeals,
Div. I.

Aug. 14, 2003.

March, Liley & Olive, P.C., Stewart W. Olive, Fort Collins, Colorado, for Appellant.

Thomas W. Metcalf, Fort Collins, Colorado, for Appellee.

Opinion by Judge TAUBMAN.

In this post-dissolution proceeding, Mourine J. Emerson, now known as Mourine J. Weaver (mother), appeals the district court's order awarding Norman D. Emerson (father) child support, requiring her to pay a portion of the special advocate (SA) fees, and denying her request for attorney fees. We affirm.

In the 1997 permanent orders, mother was named the primary residential custodian of the parties' two children. In 2000, father filed a motion for modification, requesting that he be named the residential parent.

At the same time, father also filed a motion for appointment of an SA to address parenting time, and he stated that he "will pay the initial costs for the [SA] which he understands to be $1,500." Mother agreed to the appointment of an SA "under the condition that [father] pay all costs associated with the appointment including the initial costs of $1,500." In appointing the SA, the magistrate ordered father to pay the $1,500 retainer, and provided that the SA "[c]ost may be later assessed between the parties."

In her response to the SA's report, mother stated that she "allowed" the children to live with father beginning November 21, 2000, and father agreed to have the children reside with him. That decision by mother became an order in March 2001 when the court named father the residential parent during the school year and awarded mother parenting time.

Citing the switch in residential placement as a continuing change of circumstances, in July 2001 father filed a motion to modify child support. Mother requested discovery of father's income in connection with the calculation of that support and eventually obtained an order compelling father's discovery responses. The magistrate reserved the issue of attorney fees requested in connection with the motion to compel.

The hearing on child support took place in March 2002. The magistrate calculated child support at two levels based on the number of overnights mother exercised with the children, using worksheet A through the end of March 2002, and worksheet B thereafter. The effective date of mother's child support obligation was December 2000 because the mutually agreed upon change in physical care occurred the previous month. Mother was ordered to pay SA fees of $675, and her request for attorney fees was denied.

On mother's motion for review, the district court adopted the magistrate's order.

I. Child Support Determination
Based on Mutually Agreed
Change of Residence

Mother contends that her child support obligation should be effective as of July 2001, when father filed his motion to modify child support, rather than be made retroactive to December 2000. Her reasons are twofold, and we reject each in turn.

A.

First, mother argues that the applicable statute was interpreted erroneously. We disagree.

Generally, a modification of child support is effective as of the date of filing of a motion

to modify. Section 14–10–122(1)(a), C.R.S. 2002; *see In re Marriage of Pickering,* 967 P.2d 164 (Colo.App.1997)(finding irreconcilable conflict in prior version of modification statute and concluding that one subsection was repealed by implication). However, under the provisions of § 14–10–122(5), C.R.S. 2002, when a mutually agreed upon change of physical care occurs, the provisions for child support of the obligor under the existing child support order, if modified pursuant to this section, will be modified as of the date when physical care was changed. *See also* § 14–10–122(1)(d), C.R.S.2002 (providing that if child support is modified pursuant to § 14–10–122(1), the modification should be effective as of the date of the filing of the motion, unless the court finds that it would cause undue hardship or substantial injustice or unless there has been a mutually agreed upon change of custody as provided in subsection (5)).

Mother agrees that under the plain language of § 14–10–122(5), the prior support obligation of the prior obligor completely terminates upon a mutually agreed upon change of physical care. However, she argues that because the statute does not mention the prior obligee, the statute does not require a concomitant and immediate imposition of a support obligation on the prior obligee. Thus, she urges that while father's obligation under the existing support order ceased when the children began living with him, she is not automatically charged with providing support as of that date. We are not persuaded.

■ Traditional principles of statutory interpretation support our reading of this statute. When construing a statute, we seek to effectuate the legislative intent of the General Assembly. *People in Interest of J.R.T.,* 70 P.3d 474 (Colo.2003). Words and phrases should be given their plain and ordinary meaning unless the result is absurd. If the statutory language is clear and unambiguous, the statute must be applied as written, and the court need not resort to other rules of statutory construction. *In re Interest of L.F.,* 56 P.3d 1249 (Colo.App.2002).

Section 14–10–122(5) clearly provides that when children change their primary residence, "the provisions for child support of the obligor under the existing child support order ... will be *modified* as of the date when physical care was changed" (emphasis added). It does not provide, as mother asserts, that either parent's obligation terminates for a time; instead, the existing order is to be modified as of the date the children switch residences. This reading comports with the duty of both parents to provide continuing support and prevents a lapse in support. Such a lapse would be unconscionable absent a finding of undue hardship or substantial injustice as provided in § 14–10–122(1)(d), and such a finding was not made here.

■ Mother's interpretation that either party's obligation terminates for a time would result in depriving the children of one parent's support for that period. However, *both* parents owe their children a *continuing* duty of support. *See People in Interest of J.R.T., supra; In re Marriage of Salas,* 868 P.2d 1180 (Colo.App.1994). We cannot interpret § 14–10–122(5) as affording one parent a temporary reprieve from this duty.

In other contexts, the General Assembly has distinguished between modification and termination. *See In re Marriage of McNamara,* 962 P.2d 330 (Colo.App.1998)(former provision governing joint custody provided for modification or termination); *In Interest of D.R.V.,* 885 P.2d 351 (Colo.App.1994)(grandparent visitation statute provides for modification or termination); *see also Colorado Springs Disposal v. Indus. Claim Appeals Office,* 58 P.3d 1061 (Colo.App.2002)(fact that General Assembly had elsewhere drawn distinction supported plain reading of statute).

Indeed, the various subsections of § 14–10–122, C.R.S.2002, list one term or the other. *Compare* § 14–10–122(1)(a), (4), (5), C.R.S.2002 (governing modification), *with* § 14–10–122(2), (3), C.R.S.2002 (governing termination). Because child support cannot terminate until a child's emancipation, *see* § 14–10–122(3), it would be illogical to read § 14–10–122(5) as allowing a lapse in support during a child's minority.

Thus, we conclude that the magistrate correctly interpreted § 14–10–122(5) to mean that the burden of support, along with the identity of the obligor, "shifted" when the children changed residences. Accordingly, the district court did not err in adopting the magistrate's conclusion that the modification was effective December 2000.

### B.

Mother's second argument does not persuade us otherwise. She asserts that because she was unable to document father's income until after the court compelled the production of discovery, and she had no determination of her overnights until the March 2001 order, she could not have calculated her child support in December 2000. Therefore, she concludes that the support was not due until the magistrate issued the 2002 order calculating the amount of support. Again, we disagree.

The inability to calculate the amount due does not change the fact that mother became the obligor as of the date of the change in residence. Unless the parties agreed to modify the amount of child support without a hearing pursuant to § 14–10–115(3)(b)(II), C.R.S.2002, the court had to determine the new amount of child support. However, in any event, the effective date of mother's obligation remained December 2000. *See* § 14–10–122(5).

### II. Amount of Child Support

■ Mother also contends that the magistrate erred in calculating the number of overnights for purposes of determining child support. She asserts that after the children moved in with father, she had fewer overnights because father interfered with her parenting time, and therefore father is, in effect, being rewarded with extra child support for interfering with her parenting time. Thus, she asserts that the magistrate should have used worksheet B, rather than A, for the prehearing period. Under the circumstances, we disagree.

■ We recognize that the child support calculation is based, in part, on the number of overnights attributed to each parent. *See*

*In re Marriage of Antuna,* 8 P.3d 589 (Colo.App.2000)(worksheet B used for 92 or more overnights). Here, however, additional parenting time issues, including father's alleged interference with overnights and mother's entitlement to make-up time, were set for hearing in the future. The magistrate was cognizant of the pending hearing on that issue, and therefore the issue of entitlement to overnights was not yet ripe at the support hearing. *Cf. In re Marriage of Marson,* 929 P.2d 51 (Colo.App.1996)(amount of parenting time granted to a parent relates to custody, and issues relating to custody and child support are separate; therefore, where parenting time had been established in earlier litigation, and was not an issue in hearing on motion for modification of child support, the magistrate's unilateral change in the amount of parenting time was error).

The order entered in March 2001, which formalized the residential change and awarded mother parenting time, led to considerable confusion concerning the number of overnights allotted to mother. It also left open the possibility that mother would exercise some parenting time with each child individually, which could have further complicated the calculation of the number of overnights. Furthermore, the parties' evidence of the amount of parenting time exercised was conflicting.

Mother testified that she was scheduled to have 101 overnights in 2002 and 89 overnights in 2003, for an average of 95 overnights. However, there was evidence that she had not exercised all that time. Accordingly, we perceive no error in the number of overnights attributed to mother for purposes of calculating child support.

### III. SA Costs

■ Mother next contends that the order that she pay $675 for SA costs is erroneous because father agreed and was ordered to pay the initial, and only, $1,500 fee. She argues that it is unfair to allow father to request reimbursement eighteen months after the order and that he should be estopped from asserting the request. Again, we disagree.

The order of appointment specifically provided that the SA cost "may be later assessed between the parties." That wording is sufficient to preserve the issue, and we perceive no abuse of discretion by the trial court in requiring mother to share in the fee. *See* § 14-10-116(3), C.R.S.2002.

## IV. Attorney Fees

■ Mother's final contention is that the magistrate erred in failing to award her attorney fees under C.R.C.P. 37(4)(a) as a sanction against father for his discovery noncompliance that required her motion to compel discovery of his income. We are unpersuaded.

■■ C.R.C.P. 37 allows a court to impose sanctions on a party for failing to respond to discovery requests. *Gordon v. Boyles,* 9 P.3d 1106 (Colo.2000). Sanctions may include expenses incurred, including a reasonable attorney fee. *Lewis v. J.C. Penney Co.,* 841 P.2d 385 (Colo.App.1992)(applying predecessor rule). Under C.R.C.P. 37, a trial court has broad discretion to order sanctions and to determine the nature of such sanctions for a party's failure to comply with discovery. *Scott v. Matlack, Inc.,* 39 P.3d 1160 (Colo.2002).

The magistrate found that father was not "so at fault in how he's prosecuted this that he should somehow be punished or sanctioned by having to pay [mother's] attorney fees." Accordingly, the request for attorney fees as a sanction was denied. We perceive no abuse of the court's discretion.

## V. Appellate Attorney Fees

Father makes a generic request for attorney fees on appeal.

To the extent that request is made under C.A.R. 38(d), we deny it.

The order is affirmed.

Judge KAPELKE and Judge LOEB concur.