The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
November 1, 2018

## 2018COA154

## No. 17CA1219, In re Marriage Heine — Family Law — Post-Dissolution — Parenting Time — Modification of Child Support

A division of the court of appeals considers a post-dissolution

of marriage dispute involving the award of retroactive child support

in a district court's order modifying child support.  The division

concludes that, when a voluntary change in parenting time occurs,

a court may retroactively enter a child support order against either

parent without regard to the parent's status as obligor or obligee

under the existing child support order.

The resolution of this dispute requires the division to interpret

a 2013 amendment to the child support statute, § 14-10-122(5),

C.R.S. 2018, that reconciled two contradictory decisions issued by

divisions of the court.  The division determines that the legislature

intended the amendment to reflect the decision in *In re Marriage of*

*Emerson,* 77 P.3d 923 (Colo. App. 2003), prescribing a broad construction of the child support statute allowing courts to shift the support duty from the obligor to the obligee when parental care is voluntarily transferred.  Thus, the decision in *In re Marriage of White,* 240 P.3d 534 (Colo. App. 2010), finding that the statute permitted modification as to the obligor only, was legislatively overruled by the 2013 amendment.  Therefore, the division affirms the district court's order retroactively assigning a child support obligation.

Court of Appeals No. 17CA1219
Boulder County District Court No. 08DR179
Honorable Andrew R. Macdonald, Judge

In re the Marriage of

Alexandre Ford Garrett,

Appellant,

and

Daniel Meyer Heine,

Appellee.

ORDER AFFIRMED IN PART, REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE TAUBMAN
Bernard and Welling, JJ., concur

Announced November 1, 2018

Alexandre Ford Garrett, Pro Se

Daniel Meyer Heine, Pro Se

¶ 1     In this post-dissolution of marriage proceeding involving the children of Alexandre Ford Garrett (mother) and Daniel Meyer Heine (father), mother appeals the district court's order modifying child support and awarding retroactive child support.  We affirm the portion of the order retroactively establishing a child support order, reverse the portion of the order determining mother's income, and remand the case for further proceedings.  In so doing, we interpret a 2013 amendment to the child support statute that resolved conflicting decisions from divisions of our court concerning parents' responsibilities to pay child support when a voluntary change in parenting time occurs.

## I.  Relevant Facts

¶ 2     Mother and father, the parents of two children, were divorced in 2008.

¶ 3     In 2014, both parents moved to modify parenting time.  In February 2015, the district court entered a week on/week off parenting time schedule and modified child support accordingly.  The parents then agreed in June 2015 to modify the week on/week off parenting time schedule such that father would be the primary residential parent and mother would have parenting time every

other weekend and one evening per week. Based on the revised parenting time schedule, father began paying mother a reduced amount of child support. Father then moved to modify child support in July 2016.

¶ 4 The parties again agreed to change parenting time in February 2017. Mother became the primary residential parent of one child while father remained the primary residential parent of the other child.

¶ 5 After a March 2017 hearing, the district court made the following findings with respect to the parties' incomes for child support purposes:

- father was capable of earning $20,000 per month;

- mother was doing contract work and earning $2000 to $4000 per month;

- mother had an extensive background in public relations, marketing, and communications and had historically earned at least $6000 per month until she lost her job in 2016;

- mother believed that the job market was saturated and that going forward she would not be able to earn the equivalent of her prior salary; and

- the court "was not provided with credible evidence" that mother was incapable of reaching her income potential if employed full time in her field.

¶ 6     Based on these findings, the court calculated child support using $6000 per month as mother's income. The court further determined that because of the substantial changes in parenting time beginning in June 2015, mother should have been paying child support to father and therefore owed him $21,389 in arrearages. Offsetting mother's arrearages against father's current child support obligation, the court ordered father to pay mother $225.58 per month for twenty-four months and then $1116.79 per month thereafter.

## II. Income Imputation

¶ 7     Mother contends that the district court erred when it imputed $6000 per month in income to her without finding she was voluntarily underemployed. We agree.

## A. Standard of Review

¶ 8      We review child support orders for abuse of discretion. *In re Marriage of Davis*, 252 P.3d 530, 533 (Colo. App. 2011).

¶ 9      Whether potential income should be imputed to a parent in determining child support is a mixed question of fact and law. *People v. Martinez*, 70 P.3d 474, 480 (Colo. 2003). We defer to the district court's factual findings if they are supported by the record. *Id.* We review the district court's application of legal standards and legal conclusions de novo. *In re Marriage of Connerton*, 260 P.3d 62, 65 (Colo. App. 2010).

## B. Legal Principles

¶ 10      If a parent is voluntarily underemployed, child support must be calculated based on that parent's potential income. § 14-10-115(5)(b)(I), C.R.S. 2018; *see In re Marriage of Krejci*, 2013 COA 6, ¶ 28. "Voluntarily" in this context means that the parent is underemployed "intentionally, of free will." *Martinez*, 70 P.3d at 477-78. Thus, in order to impute potential income to a parent, the district court must find that the parent is shirking his or her child support obligation by unreasonably forgoing higher-paying, obtainable employment. *Id.* at 480; *see Krejci*, ¶ 28. Imputation of

income is an exception to computing child support based on actual income and should be applied with caution. *Martinez*, 70 P.3d at 478-79.

¶ 11 If the court finds that a parent is voluntarily underemployed after losing a job, it must determine what the parent can reasonably earn and contribute to the child's support by considering the following factors:

> [the parent's] firing and post-firing conduct; the amount of time the parent spent looking for a job of equal caliber before accepting a lower paying job; whether the parent refused an offer of employment at a higher salary; whether the parent sought a job in the field in which he or she has experience and training; the availability of jobs for a person with the parent's level of education, training, and skills; the prevailing wage rates in the region; the parent's prior employment experience and history; and the parent's history of child support payment.

*Id.* at 480. The court's findings must be sufficiently specific so as to inform the appellate court of the basis for its order. *In re Marriage of Campbell*, 140 P.3d 320, 324 (Colo. App. 2006).

## C. Analysis

¶ 12 Mother presented evidence at the hearing about her work in marketing and public relations and about her earnings. Her tax

returns, admitted as exhibits during the hearing, reflected that her annual income from her business was $26,946 in 2014 and $23,533 in 2015 and that she earned $52,042 in 2016.

¶ 13    Mother testified that two months after losing her job in November 2016, she accepted a lower-paying position in the design field, earning $500 per week for eight weeks and then commissions at a rate of three to five percent per sale.  Additionally, she accepted a short-term contract position with a digital marketing company where she had the potential to earn between $2000 and $4000 per month.

¶ 14    Mother further testified about her efforts to secure a higher-paying position in her field.  She consulted online resources, sent out 150 resumes, and had many interviews, yet had not secured a position because, in her opinion, the public relations market was saturated.

¶ 15    The district court made findings regarding mother's income potential, and some of those findings appear to touch on the *Martinez* factors.  *See* 70 P.3d at 480.  For example, the court considered mother's prior employment experience and history as well as her testimony that the market for public relations positions

was saturated. However, it did not explicitly find that mother was voluntarily underemployed and shirking her child support obligation, and the record does not support such findings. *See Campbell,* 140 P.3d at 324. Nor did the court make any findings concerning the reasonableness of mother's efforts to secure a full-time position at her previous salary. *See Krejci,* ¶ 29.

¶ 16 Thus, we remand the case to the district court for additional findings, reconsideration of mother's income, and recalculation of child support accordingly. *See Martinez,* 70 P.3d at 481; *Krejci,* ¶¶ 27-30; *Campbell,* 140 P.3d at 324-25.

### III. Retroactive Child Support

¶ 17 Mother further contends that the district court erred in applying section 14-10-122(5), C.R.S. 2018, and ordering her to pay retroactive child support back to June 2015, when the parties' mutually agreed upon change in physical care of the children took place. We disagree with mother's contention that imposing a retroactive child support obligation under these circumstances is prohibited.

7

## A. Standard of Review

¶ 18     We review child support orders for an abuse of discretion. *In re Marriage of Atencio*, 47 P.3d 718, 720 (Colo. App. 2002). We review the district court's application of legal standards and legal conclusions de novo. *Connerton*, 260 P.3d at 65.

## B. Rules of Statutory Interpretation

¶ 19     Resolution of this appeal requires us to determine the meaning of section 14-10-122(5), which is a question of law that we review de novo. *In re Marriage of Joel*, 2012 COA 128, ¶ 18.

¶ 20     When interpreting a statute, we look first to its plain language, giving the words and phrases their plain and ordinary meanings. § 2-4-101, C.R.S. 2018; *Joel*, ¶ 18. If the statute is clear, we apply it as written. *Joel*, ¶ 18. But if the statute is ambiguous, or susceptible of more than one reasonable meaning, we may determine the General Assembly's intent by looking to the legislative history. *In re Marriage of Ikeler*, 161 P.3d 663, 668 (Colo. 2007). "Our task is to choose a construction that gives effect to the legislature's intent and that serves the purpose of the overall statutory scheme." *Id.*

## C. Legislative History and Legal Principles

¶ 21    Ordinarily, a child support modification order is effective as of the date the motion to modify is filed.  *See* §§ 14-10-122(1)(a), (d); *see also In re Marriage of Paige*, 2012 COA 83, ¶ 7.  However, when there has been a court-ordered, voluntary, or mutually agreed upon change in the physical care of a child, child support is modified as of the date of the change in care, rather than as of the date the motion to modify is filed.  § 14-10-122(5); *see also Paige*, ¶ 7.

¶ 22    Prior to 2013, when a mutually agreed upon change in physical care occurred, section 14-10-122(5), C.R.S. 2012, allowed a court to retroactively modify those "provisions for child support *of the obligor* under the existing child support order."  (Emphasis added.)  Divisions of this court were split concerning whether that language permitted a parent's child support obligation to be retroactively modified when the parent was not an obligor under the existing child support order.  *Compare In re Marriage of White*, 240 P.3d 534 (Colo. App. 2010) (construing statute according to its plain language to find that it permitted retroactive modification as to the obligor only), *with In re Marriage of Emerson*, 77 P.3d 923 (Colo. App. 2003) (construing statute more broadly to find that it intended

9

to shift the support duty from the obligor parent to the obligee when a mutually agreed upon change in parental care occurred).

¶ 23 In *Emerson*, the division concluded that the district court had the authority to require the mother to pay child support as of the date when the father had assumed primary care of the parties' children, even though the mother was the obligee under the existing child support order. 77 P.3d at 926. The mother acknowledged that under section 14-10-122(5), as it then stated, the father's existing child support obligation could be terminated as of the date of the change in the children's care, but she argued that the statute did not permit shifting the child support obligation to her when she was not the obligor under the existing order. *Id.* at 925.

¶ 24 The division disagreed with the mother's interpretation, noting that if the statute were applied as she urged, the obligor parent's support obligation would end without an obligation being imposed on the other parent, causing the children to suffer a corresponding loss of support. *Id.* Concluding that such a result was illogical, the division determined that the statute instead intended to shift the support duty and the obligor's identity when the child's physical care changed through a retroactive modification of the existing

10

order.  *Id.*  Therefore, under the *Emerson* division's interpretation, the court was authorized to require the mother to begin paying the father child support as of the date the children began living with the father.  *Id.* at 926.

¶ 25    In *White*, a different division of this court declined to follow *Emerson* and instead concluded that the plain language of the statute permitted only the obligor's duty of support to be retroactively modified.  *White*, 240 P.3d at 538.  The mother in *White* agreed that the parties' child could live with the father and that the father could stop paying child support.  *Id.* at 536.  The father also agreed that the mother did not have to pay child support to him.  *Id.*  However, a year later, the father moved to modify child support, requesting that the mother pay him support as of the date the child began living with him.  *Id.*  Because the existing order obligated only the father to pay child support, the division held that the district court could properly reduce or eliminate his obligation retroactive to the date of the change in the child's physical care, but that it could not impose a child support obligation on the mother as of that date or for any period before the father moved to modify.  *Id.* at 538.

¶ 26    The *White* division first noted that the Uniform Dissolution of Marriage Act, sections 14-10-101 to -133, C.R.S. (2018), establishes procedures and considerations to enable courts to determine whether, when, and how much a parent should be required to pay to fulfill his or her duty to support a child. *Id.* at 539. It observed that under those procedures and considerations, only the noncustodial parent qualified as the obligor under an existing child support order, and the statute gave the obligor the choice, on assuming primary physical care of a child, of whether and when to file a motion requiring the other parent to begin paying child support. *Id.* at 540.

¶ 27    The division also disagreed with the *Emerson* division's conclusion that a narrow interpretation of the statute would cause a lapse in support during a child's minority. *White*, 240 P.3d at 539. The *White* division noted that even though the existing support order did not obligate the former custodial parent to make child support payments, the retroactive modification as of the change in physical care did not terminate that parent's child support obligation. *Id.* It further noted that section 14-10-122(5) "permits the court to retroactively modify the provisions for the

child support of the obligor in the existing order as of the date of the change of custody to ensure that the parent who gives up custody," and no longer incurs the associated expenses, "does not receive a windfall." *Id.* at 540.

¶ 28    In 2013, the legislature amended section 14-10-122(5) in two ways.  First, it clarified that a district court can modify or terminate the obligor's child support obligation as of the date physical care changed.

> Notwithstanding the provisions of subsection (1) of this section, when a court-ordered, voluntary, or mutually agreed upon change of physical care occurs, the provisions for child support of the obligor under the existing child support order, if modified pursuant to this section, will be *modified or terminated* as of the date when physical care was changed.

Ch. 103, sec. 3, § 14-10-122(5), 2013 Colo. Sess. Laws 354 (emphasis added).  Second, it added the following language: "The provisions for the establishment of a child support order based on a court-ordered, voluntary, or mutually agreed upon change of physical care may also be entered retroactively to the date when the physical care was changed." *Id.*  We conclude that these modifications, when read together, still do not resolve the statute's

ambiguity recognized in *Emerson* and *White*. In our view, the statute remains susceptible of multiple interpretations — one, that a court may modify or terminate only the obligor's child support obligation as of the date physical care changed, or two, that a court may establish a new child support obligation against either parent as of the date physical care changed.

¶ 29 In light of this ambiguity, we attempt to discern whether the legislature intended the amendments to address the *White-Emerson* conflict and, if so, whether it intended the amendments to validate the *White* or *Emerson* division's interpretation and application of the statute. We must engage in this examination of legislative intent because the statute is ambiguous. Thus, we look to the legislative history of the 2013 amendments to section 14-10-122(5), and we conclude that the General Assembly intended to change the statute in favor of the *Emerson* division's interpretation.

¶ 30 The amendments to section 14-10-122(5) were proposed in the House of Representatives in February 2013. When introducing the bill, the bill's sponsor indicated that the proposed amendments were based on recommendations from the Child Support Commission. Hearings on H.B. 13-1209 before the H. Pub. Health

Care & Human Servs. Comm., 69th Gen. Assemb., 1st Sess. (Feb. 19, 2013) (statement of Representative May). The Child Support Commission is charged with reviewing the child support guidelines and recommending statutory amendments. *See* § 14-10-115(16). The Commission's 2011 report is the genesis of the legislature's 2013 amendments to section 14-10-122(5).

¶ 31 In its report, the Commission explicitly recognized the conflict between *White* and *Emerson* and recommended the statutory amendments "to empower a court *with discretion* to retroactively establish a child support obligation back to the date of the mutually agreed upon change of physical care." State of Colorado Child Support Commission, Final Report, at 41 (2011), https://perma.cc/2XB5-7LDR (emphasis added). The Commission provided three reasons in support of its amendments:

1. Parents owe a continuous duty to provide financial support for their child until emancipation, regardless of the location of the child's residence;
2. The duty to provide support should not lapse, during a child's minority, just because of a change in the residence of the child; and
3. The child is the person for whom support is due and a child should not be penalized because the new custodial party fails to

15

> promptly act to seek a modification of the existing order.

*Id.* Because these reasons mirror those set forth in *Emerson,* we conclude that the General Assembly's 2013 amendments to section 14-10-122(5) legislatively overrule *White.* Therefore, we further conclude that the statute allows a court to retroactively enter a child support order against either parent, as of the date of a change in physical care of a child, regardless of the parent's status as an obligor or obligee under the existing child support order.

## D. Application

¶ 32 In this case, mother was the obligee under the existing child support order. In June 2015, when the parties agreed that their children would live with father, they also agreed that father's child support obligation would be reduced. Father then moved to modify child support, asking the court to retroactively establish a child support order from June 2015 forward.

¶ 33 Even though mother was the obligee under the existing child support order, the court, consistent with *Emerson* and as permitted by the 2013 amendments to section 14-10-122(5), retroactively established a child support order obligating mother to pay support

16

as of the date the children began living with father. We therefore conclude that the court did not err by imposing a child support obligation on mother beginning in June 2015.

¶ 34 However, because we cannot discern whether the district court imposed the retroactive child support obligation as an act of discretion or imposed it under the mistaken view that it was required to do so, on remand, the district court must set forth the factors it considers in determining whether to impose such an obligation. Because we have remanded the case for the court to reconsider mother's income and redetermine child support accordingly, the court must also recalculate the parties' arrearages under subsections 14-10-122(1)(d) and (5). Because of this disposition, we do not address mother's additional argument that the court erred in assuming the parties' incomes remained unchanged for purposes of retroactive child support calculation. In its discretion, the district court may consider additional evidence from the parties.

¶ 35 Mother also argues that the court erred in awarding retroactive child support because doing so created an undue hardship and resulted in a substantial injustice for her, because

she and father had an oral contract as to the modified child support, and because the doctrine of equitable estoppel relieved her of her obligation to pay retroactive child support. Because mother did not raise these arguments in the district court, however, we may not address them here. *See Melat, Pressman & Higbie, L.L.P. v. Hannon Law Firm, L.L.C.*, 2012 CO 61, ¶ 18 ("It is axiomatic that issues not raised in or decided by a lower court will not be addressed for the first time on appeal."); *cf. In re Marriage of Boettcher*, 2018 COA 34, ¶ 32 (upholding retroactive modification order when parent did not argue a basis for undue hardship and substantial injustice in district court). In its discretion, however, the district court may consider these arguments on remand.

## IV. Conclusion

¶ 36 The portion of the district court's order retroactively establishing a child support obligation for mother is affirmed, the portion of the order determining mother's income is reversed, and the case is remanded for further proceedings as provided herein.

JUDGE BERNARD and JUDGE WELLING concur.