23CA0720 Marriage of Bolton 11-14-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA0720
Jefferson County District Court No. 17DR30236
Honorable Lily W. Oeffler, Judge

In re the Marriage of

Stacey Bolton, n/k/a Stacey Stafford,

Appellee,

and

Michael K. Bolton,

Appellant.

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE J. JONES
Lipinsky and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 14, 2024

The Harris Law Firm PLLP, Katherine O. Ellis, Denver, Colorado, for Appellee

Feingold Horton, PLLC, Frances C. Fontana, Greenwood Village, Colorado, for Appellant

¶ 1     In this post-dissolution of marriage proceeding involving Michael K. Bolton (father) and Stacey Bolton, now known as Stacey Stafford (mother), father appeals the district court's post-decree orders on spousal maintenance modification, child support modification, and attorney fees.  We affirm.

## I.     Background

¶ 2     Mother petitioned to end the parties' twenty-four-year marriage in 2017.  The next year, the district court entered a dissolution decree and permanent orders.  This case arises out of two post-decree motions filed by father: one to modify parenting time and decision-making responsibility regarding the parties' children and the other to modify spousal maintenance and child support.

¶ 3     The court denied the first motion and awarded wife her attorney fees incurred in responding to that motion under section 14-10-119, C.R.S. 2024.  Father appealed the award of attorney fees.  A division of this court reviewed the attorney fees award and remanded for additional findings on the parties' overall economic circumstances.  *In re Marriage of Bolton*, (Colo. App. No. 22CA0435, May 4, 2023) (not published pursuant to C.A.R. 35(e)) (*Bolton I*).

1

¶ 4    While that appeal was pending, father filed the second motion. The district court denied that motion. It concluded that, as to maintenance, no modification was appropriate in light of the parties' respective incomes. And as to child support, the court determined that the $3,000 figure to which the parties had stipulated for purposes of permanent orders remained appropriate given the parties' respective incomes and other relevant economic circumstances.

¶ 5    Around the same time, as the prior division directed, the district court entered an order on mother's attorney fees incurred in responding to father's motion to modify parenting time and decision-making authority. Taking into account evidence and testimony the parties had submitted on father's two motions, the court made the following factual findings relevant to this appeal:

- Father was voluntarily underemployed, having accepted a seventy percent salary reduction from his sole client.
- Father hadn't conducted a good faith job search for higher paying employment.
- Father's imputed income remained $50,000 per month based on past earnings.

- Mother should be awarded attorney fees because of the disparity in the parties' finances.

The court ordered father to pay half of mother's fees.

## II.    Discussion

¶ 6     Father challenges the district court's orders on spousal maintenance, child support, and attorney fees.  We affirm the orders.

## A.    Maintenance Modification

¶ 7     Father contends that the district court erred by imputing income to him in denying his request to modify spousal maintenance.  We don't agree.

### 1.    Additional Facts

¶ 8     Father worked as outside general counsel for a single client, a corporation.  He testified that his income from 2016 through 2019 was so high (about $80,000 per month) because during that time the corporation was engaged in intense litigation involving the father of one of the corporation's chief executive officers, and that his income was reduced in 2020 when commodity prices in the corporation's industry collapsed, culminating in a renegotiation of his compensation agreement.  He agreed to reduced compensation

of $25,000 per month as offered by his client. He also said that he "constantly looked at other alternatives" of employment by routinely checking for jobs and adding his name to legal placement service email lists.

¶ 9 The district court found, however, that father could continue to earn $50,000 per month — the amount the court had imputed to father for permanent orders — but father "made a choice to make significantly less than what he has made in the past and what he was continuing to make." Based on that conclusion, and others discussed below, the court denied father's motion.

### 2. Standard of Review and Applicable Law

¶ 10 We review a maintenance award for an abuse of discretion. *In re Marriage of Medeiros*, 2023 COA 42M, ¶ 58. But whether a spouse is voluntarily underemployed is a mixed question of fact and law. *In re Marriage of Garrett*, 2018 COA 154, ¶ 9. We defer to the district court's factual findings if they have record support. *In re Marriage of Gibbs*, 2019 COA 104, ¶ 9 ("We defer to the district court's factual findings unless they are clearly erroneous." (citing *In re Marriage of Connerton*, 260 P.3d 62, 66 (Colo. App. 2010))); *In re Marriage of Bowles*, 916 P.2d 615, 617 (Colo. App. 1995) (the

district court's resolution of conflicting evidence is binding on review). We review questions of law de novo. *In re Marriage of Young*, 2021 COA 96, ¶ 9.[1]

¶ 11 "Motions to modify are not considered under the same standard as initial awards." *Id.* at ¶ 16. Maintenance should only be modified "upon a showing of changed circumstances so substantial and continuing as to make the terms unfair . . . ." § 14-10-122(1)(a), C.R.S. 2024. The moving party "bears a heavy burden of proving that the provisions have become unfair under all relevant circumstances." *Young*, ¶ 12.

¶ 12 "If a party is voluntarily unemployed or underemployed, maintenance shall be calculated based on a determination of potential income." § 14-10-114(8)(c)(IV), C.R.S. 2024. Voluntary underemployment means that a party is shirking a financial obligation "by unreasonably for[]going higher paying employment that he or she could obtain." *People v. Martinez*, 70 P.3d 474,

---

[1] Father asserts, in conclusory fashion, that the district court applied the wrong legal standard. But he fails to develop this challenge in his brief. We don't review conclusory assertions presented without supporting analysis and authority. *People v. Brassill*, 2024 COA 19, ¶ 64.

476-78 (Colo. 2003). Relevant factors may include the amount of time spent seeking higher paying employment, whether the parent has refused employment, whether jobs are available, prevailing wage rates in the relevant industry, and the parent's employment experience and history. *Id.*

### 3. Father's Voluntary Underemployment

¶ 13 Relying almost entirely on his own testimony, father argues that the record doesn't support the court's finding that he is voluntarily underemployed. But the district court considered that testimony and nevertheless concluded that father was never "really engaged in a job search." The court found "no good-faith effort at him attempting to find a job that in any way reflects his prior earnings." And the court found that father was, in effect, charging his client an hourly rate far below what he had charged the same client and what the market would bear, father could take on other clients, father's health didn't affect his earning ability, and, given his experience as a partner at law firms, he could obtain similar employment paying a good deal more than $25,000 per month.

¶ 14 Record evidence supports the district court's findings.[2] The court considered father's testimony concerning his health concerns and his financial disclosures, assets, liabilities, and his historical income approaching a million dollars annually. The court noted instances of forgoing higher paying employment — father's failure to renegotiate his compensation with his sole client and his refusal to take on additional clients as he had done in the past. The court reviewed father's sporadic and limited search for employment at the income level he previously enjoyed — discussion with one family business of a possible engagement and passive listings on websites. And it noted that, when father did invest time in a job search, he did so with limited effort. It also compared his current claimed earnings of $25,000 per month to his historic income, including earning $80,000 a month at the time of permanent orders. Therefore, we conclude the court acted well within its discretion by finding that father was voluntarily underemployed.

---

[2] Though the court didn't use the term "shirking," its conclusion that father was shirking was implicit. A court's findings may be implicit in its ruling. *See In re Marriage of Nelson*, 2012 COA 205, ¶ 41. Still, it must make factual findings sufficient to support its determination. *In re Marriage of Martin*, 42 P.3d 75, 80 (Colo. App. 2002). The court did so.

## 4. Father's Health

¶ 15     Father also argues that the district court's decision to impute income to him was erroneous because the court disregarded his health concerns. We disagree.

¶ 16     Father had cancer in 2000. In 2016, he had a heart attack and was diagnosed with cardiovascular disease. He was also hospitalized in October 2022 for symptoms of an unknown origin but was released the next day. Father testified that it was more challenging for him to do his job as an attorney than it had been because of these health concerns.

¶ 17     Father anticipated that he would be unable to ski his usual thirty days during the 2022-2023 season due to his health. At the very hearing at which his health concerns were discussed, however, he said he had just returned from an overseas trip — working significant hours abroad. And he was scheduled to board a plane for another work trip the day after the hearing.

¶ 18     The district court concluded that $50,000 of imputed monthly income remained an appropriate income figure after considering father's health concerns. The district court found that father was able to work extraordinary hours from time to time, including the

days surrounding the hearing. And father hadn't indicated that his health concerns interfered with his ability to ski, just that they might interfere going forward.

¶ 19 Under these circumstances, we can't say that the district court gave insufficient weight to father's health-related testimony. *See In re Estate of Owens*, 2017 COA 53, ¶ 22 (the weight to be given particular testimony is entirely within the district court's purview); *In re Marriage of Rahn*, 914 P.2d 463, 465 (Colo. App. 1995) (an appellate court may not reweigh the evidence).

## B.  Child Support Modification

¶ 20 Father next argues that the district court abused its discretion by not modifying the child support obligation. Again, we disagree.

### 1.  Additional Facts

¶ 21 Mother and father stipulated — for purposes of the permanent orders entered in 2018 — that father would pay mother $3,000 in child support per month. At the time, the parties' five children were all under the age of majority. By the time father filed his motion in 2023, two were emancipated. After reviewing the child support guidelines and the evidence concerning the parties' financial circumstances, the court determined that $3,000 per month

remained "a fair and equitable child support payment."  The record shows that the court considered the following:

- Father's imputed income remained $50,000 per month.

- Mother's income from her work was $3,333 per month.

- Father's maintenance obligation to mother had been reduced by $3,000 per month per the permanent orders.

- Two children had reached the age of nineteen or above.

- Father no longer exercised overnight parenting time with the children and his parenting time with them had decreased over the years.

- The parties' combined income significantly exceeded the top gross income in the statutory child support schedule. *See* § 14-10-115(7)(b), C.R.S. 2024.  The court said that, at the top end of the schedule, father's obligation would average $2,800 per month, taking into account the children's ages and changes in father's maintenance payments to mother.  Extrapolating from the schedule based on the parents' combined income would yield a figure "thousands of dollars higher."

- The combined cost of the children's food, shelter, education, transportation, and recreation had increased since dissolution.

- Mother pays for the children's expenses aside from healthcare.

- Mother had legitimately incurred significant debt.

- Mother's attorney fees had been very high.

- Mother had needed to liquidate retirement assets.

- Father had liquidated assets.

### 2. Standard of Review and Applicable Law

¶ 22    We review a child support order for an abuse of discretion because determinations regarding the parents' financial resources are factual in nature. *In re Marriage of Balanson*, 25 P.3d 28, 35 (Colo. 2001). A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or misapplies the law. *In re Marriage of Bergeson-Flanders*, 2022 COA 18, ¶ 10. We review de novo whether the district court applied the correct legal standard. *In re Marriage of Boettcher*, 2018 COA 34, ¶ 6, *aff'd*, 2019 CO 81.

¶ 23    "[P]rovisions of any decree respecting child support may be modified . . . only upon a showing of changed circumstances that are substantial and continuing . . . ." § 14-10-122(1)(a).  A court must determine whether — because of a substantial and continuing change — the terms of the original decree have become unfair.  *In re Marriage of Aldrich*, 945 P.2d 1370, 1375 (Colo. 1997).  The moving party bears a heavy burden to show credible evidence of a cognizable change.  *Id.* at 1376.

### 3.    Father's Income

¶ 24    Because we've already concluded that the district court didn't abuse its discretion by imputing income to father for purposes of spousal maintenance, we likewise reject father's identical challenge to the court's child support determination.

### 4.    Mathematical Error

¶ 25    Father argues that the district court made a mathematical error in its analysis of his motion to modify child support.  We conclude that, although the district court did make a mathematical error, the error was harmless.

¶ 26    In the course of issuing its ruling, the court said, "The Court has considered the disparity in income between the parties.  Using

12

$50,000 a month as imputed income that should be earned, the Court finds that [father] earns double the income of [mother] even when maintenance and child support are added as income."

¶ 27    Father argues that, if his maintenance payments to wife and child support count as part of her income, then for child support calculation purposes, those same amounts should be subtracted from his income. Thus, he says, his $50,000 imputed monthly income should be reduced by his monthly $18,000 maintenance and $3,000 child support obligations, making his income $29,000 per month. On the other hand, mother's imputed income of $3,333 per month plus the maintenance and child support makes her total income $24,333 per month. This would mean that father has about twenty percent more income than mother, not one hundred percent more as the district court indicated.

¶ 28    Mother concedes that the court made a mathematical error. But she says that, under the permanent orders, her maintenance was reduced to $15,000 on May 1, 2023, making father's monthly income $32,000 after paying maintenance and child support. Her income of $3,333, plus $15,000 in maintenance and $3,000 child support, makes her monthly income $21,333. This means that

father has about fifty percent more income than she does. Mother's calculation is correct.

¶ 29 Accordingly, we conclude that the district court erred by saying that father earned double mother's income after accounting for maintenance and child support. But because the record supports the court's ultimate determination that $3,000 remains a fair amount of child support, we conclude that the error is harmless. *See* C.R.C.P. 61 (we may disregard any error not affecting the parties' substantial rights).

¶ 30 The court's error didn't affect father's substantial rights for the following interrelated reasons. First, the difference in incomes was only one factor among many the court considered. (We discuss these factors in more detail below.)

¶ 31 Second, while knowing the children's ages, father stipulated to paying mother $3,000 per month. He knew at the time that his children would, over time, reach the age of majority, but he nevertheless agreed to the figure without making any provision for a change in the child support amount based on the children's ages.[3]

---

[3] We don't say that this alone precluded father from seeking a modification of child support; it's simply a relevant factor.

¶ 32    Third, the parents' combined imputed income was well above the top of the schedule of base child support obligations created by the General Assembly. *See* § 14-10-115(7)(b). Because of this, the court had broad discretion in calculating support. *See Boettcher*, ¶¶ 12-18. As noted, the district court said it had extrapolated from the schedule and calculated a projected amount of monthly child support "thousands of dollars higher" than $2,800 per month. Father doesn't take issue with that conclusion.

¶ 33    Fourth, the court recognized changes in circumstances supporting a figure of $3,000 per month in child support, notwithstanding that two of the parties' five children had reached the age of majority. For one, it noted that father no longer exercised overnight parenting time with any of the children. The court also found that father's overall parenting time had decreased over the years. The court found, with record support, that the cost of the children's food, shelter, transportation, and recreation — all of which mother paid — had increased.

¶ 34    Fifth, the court considered the incomes, assets, and liabilities of both mother and father and concluded, in essence, that father was in a far better financial position than mother.

¶ 35    So although the district court made a mathematical mistake by finding that father earns twice the income of mother after accounting for maintenance and child support, in the end, its decision not to modify father's child support obligation is supported by the record. The fact remains that father's income is fifty percent higher than mother's — even accounting for maintenance and child support — and the court properly considered other circumstances showing that $3,000 per month remained fair, equitable, and in the children's best interests.

### 5.    Mother's Debt

¶ 36    Father next argues that the district court erred by mischaracterizing the reason for mother's debt. We disagree.

¶ 37    Father says the court should not have considered mother's debt because mother incurred it to pursue a Ph.D. degree and her choice to do so won't benefit the children before all but one will become emancipated.[4]

¶ 38    The court, however, may consider debt when evaluating financial circumstances. *See* § 14-10-115(2)(b). And we agree with

---

[4] The debt considered by the court also included attorney fees incurred in this litigation.

mother that father hasn't provided any authority supporting the proposition that incurring debt to obtain higher paying employment is somehow irrelevant to the required evaluation of the parties' financial circumstances. Therefore, we conclude that the district court didn't abuse its discretion by considering mother's student loan debt.

### 6. Father's Asset Liquidation

¶ 39 We also reject father's argument that the district court improperly weighed evidence of his use of assets to pay expenses.

¶ 40 To support his assertion, father cites the court's statement that he was using his retirement funds to pay expenses, and contrasts this with the court's statement at a hearing that "It's a mystery why [father] is not in debt. It's a mystery how [father] is able to pay these expenses."

¶ 41 It appears that father believes the court therefore failed to account for his use of assets to pay expenses when imputing income to him. But we have already concluded that record evidence supports the court's imputation of income to father — a conclusion independent of father's asset liquidation. Father fails to explain how his liquidation of certain assets should have led the district

court to arrive at a different figure when imputing income to him. To the extent father argues that his sworn financial statements and related documents should have led the court to reach a contrary conclusion, it was within the court's province to weigh any conflicting evidence. *See Bowles*, 916 P.2d at 617.

## C. Attorney Fees

¶ 42 Lastly, father asks us to reverse the district court's order entered on remand requiring that he pay half of mother's attorney fees incurred in connection with his motion to modify parenting time and decision-making authority. He hasn't convinced us to do so.

### 1. Additional Facts

¶ 43 As noted, a division of this court reversed and remanded the previous award of attorney fees on the first modification motion for additional findings. *Bolton I*, ¶¶ 19-20. On remand, the district court made additional findings. It determined how much father could earn in income using an imputed income analysis, considered father's and mother's respective expenses, factored in mother's receipt of maintenance, and considered the parties' respective

assets and liabilities.  The district court concluded that it was fair and equitable that father pay half of mother's fees.

### 2. Standard of Review and Applicable Law

¶ 44    "We review the district court's decision to award attorney fees and costs for an abuse of discretion, but we review the legal conclusions forming the basis for that decision de novo."  *In re Marriage of Gallegos*, 251 P.3d 1086, 1087 (Colo. App. 2010).  "[A]n award of attorney fees must be reviewed in light of the parties' financial resources after the property division and any maintenance award."  *In re Marriage of Huff*, 834 P.2d 244, 248 (Colo. 1992).  "The trial court has wide discretion in awarding attorney fees, and its ruling will not be disturbed absent an abuse of that discretion."  *In re Marriage of McCord*, 910 P.2d 85, 90 (Colo. App. 1995) (citation omitted).

¶ 45    "The court from time to time, after considering the financial resources of both parties, may order a party to pay a reasonable amount . . . for attorney fees . . . ."  § 14-10-119.  "The award of fees is designed to equalize the status of the parties and to enable the court to ensure that neither party is forced to suffer unduly as a consequence of the proceedings."  *McCord*, 910 P.2d at 90.

### 3. Analysis

¶ 46 Father argues that the district court failed to follow the division's instructions on remand by applying an improper legal analysis in its determination. We disagree.

¶ 47 First, father says that the district court was supposed to determine attorney fees as of the time of the original post-decree hearing and should have held a hearing on remand to determine the parties' economic circumstances as of that point in time. He bases this argument on the following line from the division's opinion: "On this record, however, we cannot tell if the court evaluated the parties' overall economic circumstances at the time of the proceeding." *Bolton I*, ¶ 15. His argument, however, misconstrues the division's opinion.

¶ 48 The statement on which father relies was made in the context of addressing whether there were sufficient findings to meaningfully review the district court's resolution of mother's request for attorney fees in December 2021. Later in the opinion, the division gave the district court directions to follow on remand:

> If the court on remand determines that the disparity in the parties' *current* financial circumstances is not what it originally

20

> believed, it may deny mother's request.  If, on the other hand, the court determines that the parties' *current* financial circumstances are sufficiently disparate that a fee award is appropriate, the court must apply the lodestar method . . . .

*Id.* at ¶ 20 (emphasis added).  The division plainly contemplated that the district court would evaluate the parties' circumstances as of the time of its determination of mother's request on remand.

¶ 49     Second, father repeats his mathematical error argument concerning the parties' respective incomes.  But, as discussed above, the court's calculation was not as mathematically incorrect as father claims: father's income is still one-and-one-half times mother's.

¶ 50     As well, the court reviewed a substantial amount of testimony and other evidence relating to father's motion and made extensive findings based on that evidence.  We simply cannot say that the court's determination of attorney fees suffers from insufficient findings or a lack of supporting evidence.

### III.   Appellate Attorney Fees

¶ 51     Mother requests an award of her appellate attorney fees under section 14-10-119, citing a significant disparity in the parties'

respective financial circumstances.  Because the district court is better positioned than we are to resolve factual issues associated with this request, we remand the case to the district court to determine whether mother is entitled to an award of appellate fees and, if so, the appropriate amount.  *See* C.A.R. 39.1; *In re Marriage of Thorburn*, 2022 COA 80, ¶ 58.

## IV.  Disposition

¶ 52      The judgment is affirmed, and the case is remanded for further proceedings concerning mother's request for appellate attorney fees.

JUDGE LIPINSKY and JUDGE SULLIVAN concur.