24CA0763 Marriage of Shumway 07-17-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0763
San Miguel County District Court No. 18DR22
Honorable Keri A. Yoder, Judge

In re the Marriage of

Kristyn Elizabeth Shumway,

Appellee,

and

Russell Scott Shumway Jr.,

Appellant.

ORDER AFFIRMED

Division I
Opinion by JUDGE MOULTRIE
Kuhn and Berger*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 17, 2025

Kristyn Elizabeth Shumway, Pro Se

Anne Whalen Gill, LLC, Anne Whalen Gill, Castle Rock, Colorado, for Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1      In this post-dissolution of marriage proceeding, Russell Scott Shumway, Jr. (father) appeals the district court's order (1) denying his request for discovery sanctions; (2) determining retroactive child support; and (3) denying attorney fees. We affirm.

## I. Background

¶ 2      The court issued final orders dissolving father's marriage to Kristyn Elizabeth Shumway (mother) in 2019. The parties have three children, two of whom had emancipated at the time of this appeal. Two years after the final orders entered, the court modified child support (2021 child support modification order). Mother was then obligated to pay father $1,247 monthly for child support.

¶ 3      Mother appealed once. This is father's third appeal. In August 2022, mother — who had been timely and completely paying her child support obligation — filed a motion to modify, claiming that the older children had spent almost every night with her since July 2021. In January 2023, the court modified mother's obligation to pay father, reducing it to $1,055 monthly. Mother resumed timely and complete payments at this new amount.

¶ 4      In father's most recent appeal, the division in *In re Marriage of Shumway*, (Colo. App. No. 22CA0607, April 20, 2023) (not

1

published pursuant to C.A.R. 35(e)), remanded the case to the district court to recalculate mother's income, recalculate child support based on current evidence of the parties' finances, and determine attorney fees at the district court and appellate levels. Upon remand, and in response to father's new motion to modify child support, father's motion for discovery sanctions, and mother's motion for extracurricular expenses, the district court held a hearing (the hearing) in December 2023.

¶ 5    The court issued an order with detailed findings of fact and conclusions of law that — as relevant here — modified parenting time and child support, as well as determined attorney fees.  The court's initial calculations for child support resulted in mother generally owing father for retroactive child support as follows:

| Date Range | Parenting time | Child Support |
|---|---|---|
| 1/8/21 – 6/30/21 | All children: equal overnights with each parent | Mother owes father $2,469 monthly |
| 7/1/21 – 1/31/22 | Two older children: all overnights with mother<br>Youngest child: 50% overnights with father | Mother owes father $626 monthly |

| Date Range | Parenting time | Child Support |
|---|---|---|
| 2/1/22 – 11/5/22 | Two older children: all overnights with mother<br>Youngest child: all overnights with father | Mother owes father $1,662 monthly |
| 11/6/22 - 11/14/23 | Older child (one older child had emancipated): all overnights with mother<br>Youngest child: all overnights with father | Mother owes father $1,839 monthly |
| 11/15/23 – 1/21/24 | Older child: all overnights with mother<br>Youngest child: all overnights with father | Father owes mother $175 monthly |
| Beginning 1/22/24 | Youngest child: 60 overnights with mother, remainder to father | Mother owes father $457 monthly |

¶ 6 However, considering the parties' current circumstances, the court then found that "it would be inequitable and unjust" to order (1) mother to pay child support arrearages to father; and (2) father to pay mother child support for November 15, 2023 until January 21, 2024. Thus, the court determined that neither party owed

3

additional child support to the other from November 15, 2023 until January 22, 2024, when the second oldest child emancipated. At that point, mother owed father $457 monthly in child support for the youngest child until his emancipation.

¶ 7 Father filed a motion for reconsideration, which the court denied.

## II. Discovery

¶ 8 Father first contends that the court erred, prejudicing him, when it denied his request for discovery sanctions against mother. We aren't persuaded.

### A. Relevant Law and Standard of Review

¶ 9 C.R.C.P. 16.2 governs the disclosure requirements in dissolution of marriage proceedings. Parties must affirmatively disclose all information that is material to the resolution of the case, including business and personal financial statements. C.R.C.P. 16.2(e)(1)-(2); *see* C.R.C.P. Form 35.1(c)-(d); *see also In re Marriage of Wright,* 2020 COA 11, ¶ 27. If a party does not timely provide mandatory disclosures, the district court may impose appropriate sanctions, which can include a negative inference. *See* C.R.C.P. 16.2(e)(5), (j); *see also Wright,* ¶ 27.

¶ 10     We review de novo the district court's interpretation and application of C.R.C.P. 16.2. *In re Marriage of Hunt*, 2015 COA 58, ¶ 10.

## B.     Additional Facts

¶ 11     At a status conference before the hearing, the court ordered the parties to exchange financial documentation and make mandatory disclosures pursuant to C.R.C.P. 16.2. Specifically, the court required, within thirty days of July 25, 2023: (1) completed and signed sworn financial statements; (2) the most recent three years' income tax returns; (3) the most recent three years' personal and business financial statements; (4) real estate documents; (5) information regarding personal debt, investments, employment benefits, retirement plans, and bank and financial institution accounts; as well as (6) documentation regarding income, employment- and education-related child care, insurance, and extraordinary children's expenses.

¶ 12     Mother did not initially comply or appear at a subsequent contested discovery hearing. The court then ordered that mother provide more specific disclosures, including (1) loan applications for four vehicles, mother's Mountain Village lot, mother's San Diego

home, and mother's small business loan; (2) title documents for the Mountain Village lot and mother's San Diego home; (3) loan documentation and statements for four vehicle loans and mother's San Diego home; (4) documentation for mother's four investment accounts and three personal checking accounts; (5) information concerning rental income and a "$250K Loan to Shareholder"; and (6) health and property insurance documentation. The court informed mother that she could face sanctions, such as the court drawing a negative inference against her during the hearing, if she did not comply. Mother filed two status updates in advance of the hearing, indicating that she had complied with the disclosure orders to the best of her ability.

¶ 13 The court indicated that it would consider the issue again at the start of the hearing. Father raised the issue of the allegedly incomplete disclosures — specifically bank statements — during the hearing, and mother testified that she had provided father with "all statements for the past five years."

## C. Analysis

¶ 14 After the hearing, the court denied father's request for discovery sanctions against mother and drew no negative inferences

6

against her. It found that father had not "adequately demonstrated a violation of court orders or the law." The court also concluded that, even if mother had not provided the information by the court's deadline, father "suffered no disadvantage" stemming from a lack of timely disclosure. Our review leads us to the same conclusion. *See id.*

¶ 15  Stating merely that he was "prejudiced," father develops no argument and cites no law explaining how his substantial rights were prejudiced by the alleged omissions in mother's disclosures. Absent this necessary showing of prejudice, father does not establish a basis to reverse. *See People in Interest of A.C.*, 170 P.3d 844, 845 (Colo. App. 2007) (concluding that an alleged error, without a valid allegation of prejudice, is not grounds for reversal).

¶ 16  Moreover, the record on appeal shows that father obtained most of his requested disclosures from mother before the hearing. Father received

- title and loan documentation for the Mountain Village lot and mother's San Diego home;

- a summary of the payoff balance for mother's small business loan and how it was used to help purchase her San Diego home;

- documents related to a loan totaling $371,250;

- information regarding the purchase price for two vehicles for the older children;

- information regarding all of the investment funds; and

- information regarding the older children's personal checking accounts.

¶ 17    Mother referenced the remaining requested information in her sworn financial statement, submitted in advance of the hearing, and mother was available to testify about it.  Father could have elicited testimony from mother concerning this allegedly undisclosed evidence, but the record shows that he did not.  We therefore discern no error.  *Id.*

### III.    Bankruptcy

¶ 18    Father next contends that the district court erred when it did not consider the bankruptcy court's findings (father filed for Chapter 13 bankruptcy in June 2020).  Mother asserts that this issue was not preserved.  We agree with mother.

¶ 19    Father does not direct us to where in the record he raised this specific issue, and he cannot raise it for the first time on appeal. *See In re Marriage of Turilli*, 2021 COA 151, ¶ 12 (holding that an issue is preserved for appeal when it is brought to the court's attention and the court ruled on it); *see also In re Marriage of Garrett*, 2018 COA 154, ¶ 35 (holding that issues not raised before the district court will not be addressed for the first time on appeal). Accordingly, we decline to address the merits of his assertion. *See id.*

## IV.    Child Support

¶ 20    Father next asserts that the court abused its discretion, and miscalculated retroactive child support, when it concluded that mother's assumption of sole parenting time for the older boys was voluntary and satisfied section 14-10-122(5), C.R.S. 2024. We perceive no abuse of discretion.

### A.    Relevant Law and Standard of Review

¶ 21    Ordinarily, a child support modification order is effective as of the date the motion to modify is filed. *See* § 14-10-122(1)(a), (d). However, when there has been a court-ordered, voluntary, or mutually agreed upon change in the physical care of a child, child

9

support is modified as of the date of the change in care, rather than as of the date the motion to modify is filed. § 14-10-122(5); *see Garrett*, ¶ 21. This section applies where a modification is driven or necessitated by a change in the children's physical care arrangement. *In re Marriage of Gross*, 2016 COA 36, ¶¶ 17, 20.

¶ 22 We review child support orders for an abuse of discretion. *In re Marriage of Davis*, 252 P.3d 530, 533 (Colo. App. 2011). The court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair, or if it misapplies the law. *In re Marriage of Dale*, 2025 COA 29, ¶ 7. A court has broad discretion to modify existing parenting orders, and we must exercise every presumption in favor of upholding its decision. *In re Parental Responsibilities of S.Z.S.*, 2022 COA 105, ¶ 13.

### B. Analysis

#### 1. Not Mutually Agreed Upon

¶ 23 Relying on section 14-10-122(5), the court found that that "the parenting time as to the two older [children] was not specifically agreed to or amended through court orders." The record supports this determination.

¶ 24    The initial parenting plan, from 2019, required a "week-on, week-off parenting schedule" for the children, resulting in parenting time split evenly between mother and father. Before the 2021 child support modification hearing, the parties stipulated that the parenting time order still called for fifty-fifty parenting time. But, without modifying the parenting plan, by the beginning of July 2021, mother had assumed full custody of the older two children, eventually moving to California with them.

¶ 25    True, mother filed several motions to modify parenting time in 2022, which the court dismissed for failure to prosecute or at mother's request, but the initial parenting-time order was not modified until after the hearing. And, at the hearing, mother testified that father did not agree with her decision to take the children to California. Given these facts, the court did not abuse its discretion in concluding that the children's custody change was not mutually agreed upon. *Id.*

## 2. Voluntary

¶ 26    Although the change in custody was not mutually agreed upon, the court found that it satisfied section 14-10-122(5) because

it "was voluntary and has continued uninterrupted from July 2021 through present."  This, too, was not an abuse of discretion.

¶ 27      Here, while father did not explicitly agree to the children's change of custody, the change was nonetheless voluntary because the record shows that he intentionally allowed it.  *See* Black's Law Dictionary 1892 (12th ed. 2024) (defining voluntary as "[d]one by design or intention"); *see also S.Z.S.*, ¶¶ 15-17 (parental consent for substantial change in parenting time need not be explicit but can be implied from a "voluntary transfer of custody").

¶ 28      Father testified that starting in July 2021, the older children would not leave mother's home for father's parenting time with them.  But the record shows that father declined mother's invitation to come into the house and convince the older children.  Moreover, for more than two years, father neither filed a motion to enforce the initial fifty-fifty parenting time order, nor informed the court that mother had assumed full time parenting for the two older children.

¶ 29      Given this record, which supports the court's determination that the older children's change from fifty-fifty parenting time to full-time parenting time with mother was voluntary, we perceive no abuse of discretion.

## V.    Attorney Fees in the District Court

¶ 30    After the hearing, at which the court made more findings regarding attorney fees in response to the division's remand instructions, the court again denied father's request for attorney fees.  Father contends that the court erred because, when determining attorney fees, it improperly considered his voluntary underemployment, making a negative inference about father.  The court did not err.

### A.    Relevant Law and Standard of Review

¶ 31    A district court has broad discretion in granting attorney fees and costs under section 14-10-119, C.R.S. 2024, and we will not disturb its decision on appeal absent an abuse of discretion.  *In re Marriage of Aragon*, 2019 COA 76, ¶ 8.

¶ 32    Section 14-10-119 provides, in relevant part, as follows:

> The court from time to time, after considering the financial resources of both parties, may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this article . . . and for attorney fees . . . including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment.

13

The statute empowers the court to equitably apportion fees and costs between the parties based on their relative ability to pay. *In re Marriage of Gutfreund*, 148 P.3d 136, 141 (Colo. 2006). The purpose of any award under section 14-10-119 is to equalize the parties and ensure neither party suffers undue economic hardship as a result of the dissolution proceedings. *In re Marriage of Aldrich*, 945 P.2d 1370, 1377 (Colo. 1997).

¶ 33 To that end, the district court must evaluate the parties' overall economic circumstances. *See In re Marriage of Evans*, 2021 COA 141, ¶ 73; *see also Aldrich*, 945 P.2d at 1378 (the district court must make findings concerning the parties' relative incomes, assets, and liabilities). The district court must consider the parties' economic circumstances at the time of the post-decree proceeding. *In re Marriage of Martin*, 2021 COA 101, ¶ 40. "Courts are allowed great latitude to craft orders appropriate to the circumstances of a given case." *Gutfreund*, 148 P.3d at 141.

### B. Analysis

¶ 34 In determining that father would not receive attorney fees, the court considered the parties' "relative incomes, assets, and financial

circumstances."  The court, with record support, took the following facts into consideration.

- Both mother and father, at the time of the hearing, had little income.

- Each party owned a home "free of a traditional mortgage."

- Mother carried "significant unsecured debt," and father had "depleted his retirement accounts."

- Father spent "no portion of [his child support payments] on two of the three children."

Despite father's assertion to the contrary, these considerations take into account the parties' financial circumstances at the time of the post-decree hearing.  *See Martin,* ¶ 40.

¶ 35    The court also considered father's voluntary underemployment, finding that father could "immediately earn more income than [m]other based on his education and historical employment."  Father's underemployment was part of the court's income determination — that he does not otherwise appeal. Because income is a factor in the determination of attorney fees, the court did not err in considering record evidence related this factor. *See Evans,* ¶ 73 (overall economic circumstances, including

15

incomes, are relevant when analyzing attorney fees pursuant to section 14-10-119).

## VI. Appellate Attorney Fees

¶ 36    Finally, father contends that the court erred on remand, in denying his appellate attorney fees under section 14-10-119. We perceive no basis for reversal.

¶ 37    To the extent father asks for district court attorney fees in this section of his brief, we have already concluded that the court did not err in its determination of attorney fees at the district court. *See, supra* Part V.

¶ 38    Father also refers to attorney fees related to responses to mother's motions filed during the appellate process. Relying on the holding from *Duhon v. Nelson*, 126 P.3d 262, 269 (Colo. App. 2005), he suggests that he is entitled to attorney fees because he had been awarded fees "for a previous stage of the proceeding." That holding, however, is inapposite here because father cites to no record evidence indicating that he had previously been awarded attorney fees, nor has our review of the record revealed such an award. And regardless, the record shows that the district court, on remand, already considered the timeframe during which these motions were

filed, and determined, with record evidence in support, that no attorney fees would be awarded on the basis of both mother and father's economic circumstances. We therefore perceive no abuse of discretion.

## VII. Disposition

¶ 39    The order is affirmed.

JUDGE KUHN and JUDGE BERGER concur.